02-10-315-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00315-CR

 

 


 
 
 JeffREy Willard Sprayberry
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM County
Criminal Court No. 9 OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

A
jury convicted Appellant Jeffrey Willard Sprayberry of the Class B misdemeanor
offense of graffiti.  In three points, Appellant asserts that the graffiti
statute is unconstitutional as applied to him, the evidence is insufficient to
support his conviction, and the trial court erred by failing to serve him with
a copy of either the complaint or the information.  We affirm.

II. 
Factual and Procedural Background

Appellant
pleaded not guilty to charges that he intentionally or knowingly “ma[d]e
markings” by spray painting with aerosol paint the word “crook” on a sign owned
by Larry Marrs without his effective consent, causing a loss of less than
$500.  At trial, the State presented evidence that in the weeks before the
offense, Marrs and James Blyn placed political signs around the city that were
subsequently defaced with spray paint.[2]  Blyn testified that in
an attempt to catch the culprit, he, his friend Josh Thatcher, and Marrs
conducted a stakeout.  On May 6, 2009, Marrs and Blyn placed new signs out in
the morning and went back out at approximately 10:30 that evening to monitor
the signs.  Blyn and Thatcher parked in a residential neighborhood near some of
the signs.  At approximately 1:30 a.m., a tall, heavyset individual wearing a
backpack walked by, and he fit the description Blyn and Thatcher had received
from someone who had witnessed earlier vandalism of some of the signs.  Both
Blyn and Thatcher described the individual (later identified as Appellant) as
wearing blue jean shorts, a blue T-shirt, white socks, and dark-colored tennis
shoes.  After Appellant had gone a block or so, Blyn exited the car and
followed him with his binoculars.  At one point, Blyn saw Appellant put down
his bag, rifle through it, pull something out and set it on the ground, put the
backpack back on, grab the object on the ground, and continue on his path. 
Blyn then lost sight of Appellant.  A short time later, Appellant walked back
in Blyn’s direction, and Blyn hid in the bushes and called the police.

In
addition to corroborating much of Blyn’s testimony, Josh Thatcher testified
that he also exited the car after Appellant first walked by.  Thatcher took
pictures of Appellant standing across the street from some political signs and
rifling through his backpack, and he saw Appellant pull from the backpack what
looked like a Coke can but could have been a spray paint can.  Thatcher then
saw Appellant get “really close to” and kneel down in front of a sign placed in
a residential yard.  As Thatcher moved toward Appellant, Appellant suddenly
turned and walked in Thatcher’s direction.  The two men exchanged greetings,
and when Appellant disappeared behind him, Thatcher ran to the sign.  The word
“crook” was written in dripping spray paint across one of Marrs’s signs.[3] 
Thatcher got paint on his knuckle when he ran it across the sign.

Richland
Hills Police Sergeant Robert Dostie and Officer Zachary Gibson responded to a
dispatch regarding the instant offense.  Sergeant Dostie found Appellant (who
matched the description given by the 911 caller) walking in the area.  When
Sergeant Dostie stopped Appellant and asked if he had paint in his bag,
Appellant invoked his Fourth Amendment right to privacy.  Sergeant Dostie
testified that Appellant had a video camera strapped around his neck and that
he announced he was going to turn it on.[4]  Thereafter, Blyn,
Thatcher, and Marrs approached, and Blyn and Thatcher identified Appellant as
the person they had seen earlier.  Sergeant Dostie subsequently ordered Officer
Gibson to arrest Appellant, and Appellant refused to place his hands behind his
back and became “passive resistive.”[5]  When Officer Gibson
“brought [Appellant] around to try to put him down on the ground,” Sergeant
Dostie saw a can of red spray paint sticking out of one of the backpack’s
pockets.   Sergeant Dostie did not see any paint on Appellant’s hands, however.[6] 
Sergeant Dostie testified that he spoke with his commander over the phone and
then decided to arrest Appellant.

Officer
Gibson testified that before he arrested Appellant, Appellant asked why the
officers were there.  When Officer Gibson responded that a sign had been spray
painted, Appellant stated he did not know it was against the law to spray paint
a political sign.  According to Officer Gibson, when Sergeant Dostie told
Appellant they were arresting him for criminal mischief, Appellant stated he
could not be arrested because his actions constituted a political statement. 
Appellant then asked, “Isn’t [criminal mischief] only a ticket?”[7] 
After arresting Appellant and transporting him to the jail, Officer Gibson
conducted an inventory search of Appellant’s backpack and found one can of
white and one can of black spray paint.

Marrs
testified that on May 6, 2009, he replaced several defaced political signs with
new signs in various areas of the city and that he placed the sign in question
in a residential yard with the owner’s permission.  Marrs testified that the
sign in question cost approximately $3.77 and that its defacement caused him a
pecuniary loss of $500 or less.  Marrs testified that, while he wanted whoever
was defacing his signs to be arrested, he did not tell the officers to arrest
Appellant.

During
the trial, Appellant suggested that Marrs pressured the police into arresting
him because he was “investigating” some of the things Marrs was doing in his
official capacity and because the city manager and the city council set the
budget for the police department.  In Appellant’s case in chief, Officer Dyrel
Collins testified that he classified an earlier, different instance of
vandalism to a political sign (as reported by a Richland Hills resident) as
“noncriminal.”

The
trial court’s jury charge instructed the jury to determine, in turn, whether
Appellant was guilty of the Class B misdemeanor offense of graffiti, the Class
C misdemeanor offense of criminal mischief, or not guilty.  See Tex.
Penal Code Ann. § 28.03, 28.08 (West 2011).  The jury found Appellant guilty of
graffiti with pecuniary loss of less than $500.  The trial court assessed punishment
at 120 days’ confinement in the Tarrant County jail and $1000 fine, but
suspended the imposition of the sentence and placed Appellant on community
supervision for eighteen months.  As conditions of community supervision, the
trial court ordered Appellant to perform twenty-four hours of community service
and to serve seven days in jail.

III. 
Constitutionality of the Graffiti Statute

In
his first point, Appellant asserts that the evidence is insufficient to convict
him of graffiti because his conduct consisted of protected free speech under
the Texas and United States constitutions.  The State responds that Appellant
raises a First Amendment complaint for the first time on appeal and that “he
appears to make an ‘as applied’ claim—i.e., the graffiti statute is
unconstitutional as applied to him (presumably because he scrawled a
‘political’ message).”[8]  The State asserts that
because Appellant did not object at trial that his First Amendment rights were
violated by his prosecution under the graffiti statute, he failed to preserve
error.  See Curry v. State, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995).

A
challenge to the sufficiency of the evidence need not be raised in the trial
court to be preserved for appellate review.  Moff v. State, 131 S.W.3d
485, 488–89 (Tex. Crim. App. 2004); Rankin v. State, 46 S.W.3d 899, 901
(Tex. Crim. App. 2001).  An “as applied” challenge to the constitutionality of
a statute, however, cannot be raised for the first time on appeal.  Curry,
910 S.W.2d at 496; see Flores v. State, 245 S.W.3d 432, 437 n.14 (Tex. Crim.
App. 2008) (noting the “well-established requirement that appellant must
preserve an ‘as applied’ constitutional challenge by raising it at trial”); Ibenyenwa
v. State, No. 02-10-00142-CR, 2012 WL 955401, at *1–2 (Tex. App.—Fort Worth
Mar. 22, 2012, no pet. h.) (op. on reh’g).

Although
Appellant’s stated point is that “the evidence is insufficient to convict,” he
argues that “if what [he] did was protected speech then it cannot be a crime.” 
See Buckley v. Valeo, 424 U.S. 1, 96 S. Ct. 612 (1976).[9] 
He advises that the Texas and United States constitutions guarantee the right
of free speech, and he contends that the message he “allegedly spray painted on
[Marrs’s] sign” constitutes protected First Amendment speech.  We agree with
the State that Appellant challenges the constitutionality of the graffiti
statute as applied to him.[10]  Because Appellant did
not raise his challenge in the trial court, we hold that he has forfeited his
claim for review.  We therefore overrule his first point.

IV. 
Sufficiency of the Evidence

In
his second point, Appellant asserts that the trial court reversibly erred in
accepting the jury’s guilty verdict as to the graffiti offense because if he is
guilty at all, he is guilty only of the lesser included offense of criminal
mischief.

In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see Adames
v. State, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011), cert. denied,
80 U.S.L.W. 3462 (U.S. Mar. 19, 2012) (No. 11-944).  We defer to the jury’s
determinations of credibility and may not substitute our judgment for that of
the factfinder.  See Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim.
App. 2007).  We “determine whether the necessary inferences are reasonable
based upon the combined and cumulative force of all the evidence when viewed in
the light most favorable to the verdict.”  Hooper v. State, 214
S.W.3d 9, 16–17 (Tex. Crim. App. 2007).  When the record supports conflicting
inferences, we presume that the factfinder resolved the conflicts in favor of
the prosecution and therefore defer to that determination.  Clayton v. State,
235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

          The
trial court’s charge instructed the jury to find Appellant guilty of the offense
of graffiti with pecuniary loss of less than $500 if it found beyond a
reasonable doubt that he

did intentionally or
knowingly make markings, to-wit:  spray painted the word “crook” with aerosol
paint on the tangible property, to-wit:  a sign of another, namely, Larry
Marrs, without the effective consent of Larry Marrs, the owner of the tangible
property, and said markings caused a pecuniary loss of less than $500 to the
said owner . . . .  

See Act
of June 9, 1997, 75th Leg., R.S., ch. 593, § 1, 1997 Tex. Gen. Laws 2072, amended by Act
of June 18, 1999, 76th Leg., R.S., ch. 695, § 1, 1999 Tex. Gen. Laws 3297,
3297–98, amended by Act of June 19, 2009, 81st Leg., R.S., ch. 639, § 4,
2009 Tex. Gen. Laws 1435, 1435–36 (effective Sept. 1, 2009, the legislature
removed the “aerosol” qualifier from the types of paint necessary to commit an
offense) (current version at Tex. Penal Code Ann. § 28.08 (West Supp. 2011)).[11]

          Appellant
alleges that no one saw him spray paint any signs.  He explains that his
comments at the scene are the only evidence connecting him to this crime and
that he made it clear to the officers that if he had committed any crime it was
criminal mischief.  Appellant also asserts that the State failed to prove that
Marrs was the actual owner of the sign because the sign “proclaims that it is
owned by the campaign to elect Larry Marrs.”[12]  He also asserts that
“although the ‘elect me’ message was diminished[,] it[] was not destroyed by
the further political message of ‘Crook’ added to it” and therefore the value of
the sign was not diminished.

Viewed
in the light most favorable to the verdict, the evidence demonstrated that
Appellant was the only person walking in the proximity of Marrs’s reelection
sign at approximately 1:30 in the morning, that Appellant had a can of red
aerosol spray paint in his possession, and that the reelection sign had the word
“crook” scrawled across it in dripping wet red paint seconds after Appellant
had been seen kneeling down in front of the sign.  Marrs testified that his reelection
sign cost approximately $3.77 and that he placed it in a residential yard (with
permission) the day before the offense.  Marrs further testified that the
vandalism to his sign caused him pecuniary loss because he was not able to use
it again.  Finally, Appellant stated to Officer Gibson that he did not know it
was against the law to spray paint a political sign.  The trial court’s charge
instructed the jury that “pecuniary loss” means the cost of repairing or
restoring the damaged property within a reasonable time after damage occurred”;
that “owner” means “a person who has title to the property or possession of the
property”; and “possession” means actual care, custody, control or management
of the property.  The jury could have reasonably found that Appellant defaced
the sign, that Marrs was the owner of the sign, and that Marrs suffered a
pecuniary loss of less than $500.

Appellant
argues that because graffiti and criminal mischief have the same or similar
elements, he should have been convicted of Class C criminal mischief, if at
all.[13]  Although the facts of
the case differ from this one, we find the following language from the court of
criminal appeals instructive: 

          The task in
conducting a sufficiency review is not to determine which offense the appellant
should or could have been charged with; it is to determine
whether a rational fact finder could have found beyond a reasonable doubt that
the defendant was guilty of the elements of the offense with which she was
actually charged.  Our criminal laws are numerous, and some of them are quite
broad.  It is not infrequently the case that an act that violates one penal
statute may violate another statute as well.  When statutory provisions overlap
in this way, there is no inherent reason to infer that the Legislature intended
them to be mutually exclusive.  A legislature may decide that overlap is in
some ways desirable; it allows prosecutors the discretion to charge the offense
that they believe is most descriptive of a particular action, or that has the
most appropriate penalty range for a particular action.

Avery
v. State, 359 S.W.3d 230, 239 (Tex. Crim. App. 2012) (citations
omitted).  Because we hold that the jury could have found beyond a reasonable
doubt that Appellant committed the charged offense, i.e. graffiti, Appellant’s
argument that he is guilty only of criminal mischief is without merit.  We
overrule Appellant’s second point.

V. 
Service of a Copy of the Information

In
his third point, Appellant asserts that the trial court reversibly erred by
proceeding to trial “without having personally served a copy of the charge on
[him].”  He contends that the due course clause of the Texas constitution[14]
and the due process clause of the 14th amendment of the United States
Constitution require that he be given “notice of the charge against him.”[15] 
See U.S. Const. amends. V & XIV; Tex. Const. art. 1, § 10.  In
addition, he asserts that because he was not personally served with a copy of
the complaint and information, the trial court erred by proceeding with the
trial because (1) article 26.01 required a pretrial arraignment,[16]
and article 26.03 dictates there can be no arraignment until two full days
after the service of the charging instrument;[17] and (2) article 27.11
allows Appellant ten days after service of the charging instrument to prepare
for trial.[18]

The
State responds that the law does not require that Appellant be served with a
copy of the information charging him with a misdemeanor offense.  See Tex.
Code Crim. Proc. Ann. art. 25.04 (West 2009) (“In misdemeanors, it shall not be
necessary before trial to furnish the accused with a copy of the indictment or
information; but he or his counsel may demand a copy, which shall be given as
early as possible.”).[19]  The State contends
additionally that Appellant forfeited any error because he did not request
extra time before trial.  See Gallegos v. State, 425 S.W.2d 648, 650
(Tex. Crim. App. 1968).

Our rules of appellate
procedure require, as a prerequisite to presenting a complaint for appellate
review, that the record show that the complaint is preserved, i.e., that the
complaining party made a timely request, objection, or motion in the trial
court that stated the grounds for the ruling sought with sufficient specificity
to make the trial court aware of the complaint, and that the trial court ruled
on the request, objection, or motion, either expressly or implicitly.  See Tex.
R. App. 33.1; Mendez v. State, 138 S.W.3d 334, 342 (Tex. Crim. App.
2004).  The requirement of preservation of error generally applies to
constitutional errors.  See Fuller v. State, 253 S.W.3d 220, 232
(Tex. Crim. App. 2008) (stating that “almost all error—even constitutional
error—may be forfeited if the appellant failed to object”), cert. denied,
555 U.S. 1105 (2009); see also Anderson v. State, 301 S.W.3d 276, 280
(Tex. Crim. App. 2009) (“[N]umerous constitutional rights, including those that
implicate a defendant’s due process rights, may be forfeited for purpose of
appellate review unless properly preserved.”).  But rule 33.1 does not apply to
rights that are waivable only[20] or to absolute systemic
requirements, the violation of which may still be raised for the first time on
appeal.[21]  See State v.
Dunbar, 297 S.W.3d 777, 780 (Tex. Crim. App. 2009).

Appellant does not specifically
address the preservation issue,[22] although he notes that
“[t]he record does not reflect a waiver of the right to be served with a copy
of the complaint or the information by either, or both, the Appellant and his
counsel.”  We have found no authority to support an argument that the trial
court disregarded a systemic or absolute requirement or that the trial court
denied Appellant a waivable-only right.  Thus, we hold that rule 33.1 applies
to Appellant’s complaint.

Notably,
Appellant does not assert that he demanded but was not provided a copy of the
complaint or information in violation of article 25.04 and the constitutional
provisions.  Indeed, our review of the record reveals that Appellant lodged no
objections to the lack of service, he did not demand a copy of the information,
and he did not ask for extra time to prepare for trial.

A
sister court has held that because the appellant did not complain in the trial
court that his state or federal constitutional rights were violated by the
State’s failure to serve him with copies of his indictments, he forfeited any
error premised on those grounds.  See Alexander v. State, 137 S.W.3d
127, 130–31 (Tex. App.—Houston [1st Dist.] 2004, pet. ref’d).  Moreover, two sister courts
have held that article 26.03 claims are forfeited without timely objections.  See
Cordero v. State, No. 07-00-00237-CR, 2003 WL 1698889, at *6–7 (Tex.
App.—Amarillo Mar. 31, 2003, no pet.) (mem. op., not designated for
publication) (holding that appellant failed to preserve article 26.03 error
because he did not timely object to insufficient time between indictment and
arraignment); Cardona Cruz v. State, Nos. 05-00-00541-CR, 05-00-00542-CR,
2001 WL 1069219, at *2 (Tex. App.—Dallas Sept. 14, 2001, pet. ref’d) (not
designated for publication) (holding that appellant did not preserve his
article 26.03 claim because he did not object at trial to a lack of time
between service of the indictment and arraignment).  Similarly, the court of
criminal appeals, this court, and a sister court have held that the additional
time to file pleadings allowed under articles 27.11 and 27.12 must be properly
requested and refused in order show reversible error.  See Oliver v.
State, 646 S.W.2d 242, 245 (Tex. Crim. App. 1983); Trevino v. State,
900 S.W.2d 815, 817 (Tex. App.—Corpus Christi 1995, no pet.); Young v. State,
752 S.W.2d 235, 237 (Tex. App.—Fort Worth 1988), aff’d, 796 S.W.2d 195
(Tex. Crim. App. 1990).  Because Appellant forfeited his right to raise his
complaints on appeal, we overrule his third point.

VI. 
Conclusion

          Having
overruled Appellant’s three points, we affirm the trial court’s judgment.

 

 

ANNE GARDNER
JUSTICE



PANEL: 
DAUPHINOT,
GARDNER, and WALKER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  April 26, 2012









[1]See
Tex. R. App. P. 47.4.





[2]Marrs
was seeking re-election to the Richland Hills City Council, and Blyn was a
first-time candidate.





[3]The State introduced the
sign and pictures of the front of the sign in evidence.  The sign—as depicted
in the photographs in the reporter’s record—states in printed lettering,
“Re-elect Larry Marrs, Richland Hills, Texas, City Council, Place 5,” with the
word “crook” spray painted on top of it.





[4]Investigator
Jonathan Robinson testified that he obtained a search warrant for Appellant’s
video camera, which the State published to the jury.





[5]On
cross-examination, defense counsel suggested that Appellant was simply trying
to protect his video camera, but Sergeant Dostie testified, “I don’t know if he
was protecting his camera.  I think he was trying to keep his arm from going
behind his back to be handcuffed.”





[6]Sergeant
Dostie testified that a video camera on his patrol unit captured Appellant’s
arrest and that it fairly and accurately represented what occurred, although it
contained no audio.  The State published the video to the jury.





[7]Officer
Gibson explained on cross-examination that an individual can be arrested or
given a citation for a Class C misdemeanor.  See Tex. Code Crim. Proc. Ann.
art. 14.06 (West Supp. 2011).





[8]There are two types of
challenges to the constitutionality of a statute:  as applied or facial.  See
Karenev v. State, 281 S.W.3d 428, 435 (Tex. Crim. App. 2009) (Cochran,
J., concurring) (“A facial challenge is based solely upon the face of the penal
statute and the charging instrument, while an applied challenge depends upon
the evidence adduced at a trial or hearing.”).





[9]In
Buckley, the United States Supreme Court considered constitutional
challenges to various provisions of the Federal Election Campaign Act of 1971. 
See 424 U.S. at 39, 96 S. Ct. at 644.





[10]While Appellant contends
that graffiti “by its very nature conveys, literally and figuratively,
expression which is speech,” he also notes that “not all speech is protected.” 
In arguing that his actions were protected, he relies on the facts in his case;
specifically, that “instead of one political thought being expressed on a
political sign, i.e.: ‘elect me’; two were expressed, i.e.: this candidate is a
‘crook’.”





[11]At
the time of the instant offense, a person committed the offense of graffiti if
he (1) intentionally or knowingly made markings (2) on the tangible property of
another (3) without the effective consent of the owner (4) with aerosol paint,
an indelible marker, or an etching or engraving device.  Id.





[12]Appellant cites no evidence
or record reference in support of this statement.  From what we can see in the
photographs of Marrs’s sign, the front of the sign (at the bottom in small
print) appears to state, “Political Advertisement Paid for by Larry Marrs.”





[13]The primary difference
between the graffiti and criminal mischief statutes (as applicable in this
case) is that the graffiti statute required the markings to be made with
aerosol paint.  Compare Tex. Penal Code Ann. § 28.03(a)(3) (criminal
mischief), with Act of June 9, 1997, 75th Leg., R.S., ch. 593, § 1, 1997
Tex. Gen. Laws 2072, amended by Act of June 18, 1999, 76th Leg., R.S.,
ch. 695, § 1, 1999 Tex. Gen. Laws 3297, 3297–98, amended by Act of June
19, 2009, 81st Leg., R.S., ch. 639, § 4, 2009 Tex. Gen. Laws 1435, 1435–36.

Sergeant Dostie testified that the word “crook” on
Marrs’s sign was spray painted on with aerosol paint from a spray can. 
Additionally, while the Class B graffiti pecuniary loss is “less than $500” and
the Class C criminal mischief pecuniary loss is “less than $50,” neither has a
minimum amount that must be satisfied.





[14]Article 1, section 10 of
the Texas constitution provides that “[i]n all criminal prosecutions the
accused . . . shall have the right to demand the nature and cause of the
accusation against him, and to have a copy thereof.”  Tex. Const. art. I, § 10;
see Tex. Code Crim. Proc. Ann. art. 1.05 (West 2005) (stating same).





[15]Appellant
does not cite to the Sixth Amendment, but it provides in part that “[i]n all
criminal prosecutions the accused shall enjoy the right . . . to be informed of
the nature and course of the accusation . . . .”  U.S. Const. amend. VI.





[16]Article 26.01 provides,
“In all felony cases, after indictment, and all misdemeanor cases punishable by
imprisonment, there shall be an arraignment.”  Tex. Code Crim. Proc. Ann. art.
26.01 (West 2009).





[17]Article 26.03 provides,
“No arraignment shall take place until the expiration of at least two entire
days after the day on which a copy of the indictment was served on the
defendant, unless the right to such copy or to such delay be waived, or unless
the defendant is on bail.”  Id. art. 26.03 (West 2009).





[18]Article 27.11 provides,
“In all cases the defendant shall be allowed ten entire days, exclusive of all
fractions of a day after his arrest, and during the term of the court, to file
written pleadings.”  Id. art. 27.11 (West 2006).  Article 27.12
provides, “In cases where the defendant is entitled to be served with a copy of
the indictment, he shall be allowed the ten days time mentioned in the
preceding Article to file written pleadings after such service.”  Id.
art. 27.12 (West 2006).





[19]See Golden v. State,
92 Tex. Crim. 553, 554, 244 S.W. 816, 817 (1922) (“The enactment of [now
article 25.04] was doubtless to enforce the provision of the Bill of Rights
wherein it is said that one accused of crime ‘shall have the right to demand
the nature and cause of the accusation against him, and to have a copy
thereof.’  Const. art. 1, § 10.”).

Notably, in a felony case, an accused is to be served
by the sheriff with a certified copy of the indictment if the accused is in
custody “or as soon as he may be arrested,” and if the accused is on bail when
the indictment is presented, the defendant need not be served; however, upon
request, the clerk is to deliver a copy of it to the defendant or his counsel. 
Tex. Code Crim. Proc. Ann. arts. 25.01, 25.03 (West 2009).





[20]“Waivable only” rights
are litigants’ rights that must be implemented by the system unless expressly
waived.  Anderson, 301 S.W.3d at 280.  For instance, the right to the
assistance of counsel and the right to trial by jury are “waivable only”
rights.  Saldano v. State, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002).





[21]Systemic or absolute
requirements are laws that a trial court has a duty to follow even if the
parties wish otherwise.  Mendez, 138 S.W.3d at 340; see Anderson,
301 S.W.3d at 279.  Systemic requirements include jurisdiction of the person or
subject matter, a constitutional requirement that a district court conduct its
proceedings at the county seat, and a constitutional prohibition against ex
post facto laws.  Saldano, 70 S.W.3d at 888–89.





[22]Appellant asserts instead
that “the fact that the end result was deprivation of due course and due
process of law is not only ‘structural’ but ‘Constitutional’ error which cannot
be harmless beyond a reasonable doubt.  TRAP, Rule 44.2.”