

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00467-CR

WILLIAM PRESTON HOPPER                                            APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
TRIAL COURT NO. CR12877

----------

## OPINION

----------

A jury convicted appellant William Preston Hopper of continuous family violence with a deadly weapon, i.e., his hands, and the trial court sentenced him to life imprisonment as a habitual felony offender.  *See* Tex. Penal Code Ann. § 12.42(d) (West Supp. 2015), § 25.11 (West 2011).  In two points, Hopper challenges the sufficiency of the evidence to support the deadly-weapon finding and argues that the State's jury argument was improper.  Although we overrule both issues, we sua sponte modify the trial court's judgment to reflect that the

trial court assessed Hopper's punishment and affirm it as modified. *See* Tex. R. App. P. 43.2(b).

## I.  WAIVER

In his first point, Hopper argues that the prosecutor twice improperly commented on his failure to testify during his closing argument to the jury. *See* Tex. Code Crim. Proc. Ann. art. 38.08 (West 2005).  Hopper objected to the first argument, and the trial court sustained his objection.  Hopper did not request an instruction to disregard the argument or move for a mistrial.  "To preserve error in prosecutorial argument, a defendant must pursue to an adverse ruling his objection to jury argument."  *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007).  Accordingly, Hopper has forfeited any error arising from the first argument.  *See Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004). Hopper did not object to the second argument and, therefore, forfeited any error arising from this argument by the prosecutor.  *See Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004); *Wead v. State*, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004).  We overrule point one.

As part of his second point, Hopper argues in the alternative that his disqualification from the benefit of good-conduct time to reduce his sentence is unconstitutional as applied: "[I]n the alternative, . . . the statute is unconstitutional in that the words 'or exhibited' in relation to a defendant's hands violated the equal protection and due process clauses of the Constitution." *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 2015); Tex. Gov't Code Ann. § 508.145(d)(1) (West Supp. 2015).  Hopper raises this contention for the first time

on appeal and fails to point us to any authority or to include any cogent argument supporting his alternative point. As such, he has failed to preserve any error for our review. *See Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 2712 (2012); *Ibenyenwa v. State*, 367 S.W.3d 420, 422–23 (Tex. App.—Fort Worth 2012, pet. ref'd) (op. on reh'g). We overrule this portion of point two.

## II. DEADLY-WEAPON FINDING

In the remaining portion of his second point, Hopper argues that the evidence was insufficient to support the jury's finding that he used his hands as a deadly weapon.

### A. STANDARD AND SCOPE OF REVIEW

In determining whether the evidence is sufficient to support a deadly-weapon finding, we must consider all of the evidence in the light most favorable to the finding and determine whether, based on that evidence and any reasonable inferences to be drawn from that evidence, a rational jury could have found beyond a reasonable doubt that the weapon alleged in the indictment was capable of causing death or serious bodily injury in the manner of its use or intended use. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Lane v. State*, 151 S.W.3d 188, 191 (Tex. Crim. App. 2004); *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).

### B. DEADLY-WEAPON EVIDENCE

Hopper was indicted with continuous violence against the family from October 1, 2013 to February 1, 2014, specifically against two of his girlfriends

during this period: Sandra VanZant and Starla Green. *See* Tex. Penal Code Ann. § 25.11(a). The State alleged that Hopper committed assault—intentionally, knowingly, or recklessly caused bodily injury to VanZant and Green—by hitting them in the head with his hands and by impeding their breathing with his hands. *See id.* § 22.01(a)(1), (b)(2)(B) (West Supp. 2015). Based on these allegations, the State sought a finding that Hopper "did use or exhibit a deadly weapon during the commission of the offense, to wit: said defendant's hands, that in the manner of its use or intended use was capable of causing death or serious bodily injury." *See id.* § 1.07(a)(17)(B) (West Supp. 2015).

Both Green and VanZant testified at trial. Green dated Hopper and experienced his violent nature. During arguments, Hopper hit Green with his hands "on the side of the face or on the arm." During one argument, Hopper sat on top of Green and "put his hand over [her] mouth . . . and nose." Green could not breathe and was afraid that she "wasn't going to live." The struggle continued for approximately ninety seconds, and Green testified that she was in danger of losing consciousness. During a later argument, Hopper dragged Green by her neck out of his truck where she fell to the ground. Hopper picked her up by the neck again and took her into the house. This caused Green to have a "linear bruise" across her neck, which was consistent with Hopper's arm being around her neck. Hopper also tried to "take [her] jaw off, rip it off" by pulling it down with his hands. Green had to use makeup to cover the bruises and cut lip that she received during this incident. This assault convinced Green she needed to leave Hopper and to report him to the police. All of Hopper's

4

assaults on Green occurred during a two- to three-week period between the dates alleged in the indictment.

VanZant began dating Hopper after his relationship with Green ended. VanZant testified that Hopper grabbed her around her neck twice between the dates alleged in the indictment. The first assault occurred while she and Hopper were having an argument on the couch. Hopper hit her on the side of her head with his fist. Hopper continued hitting her and then sat on top of her, "grabbed" her by the throat, pinned her to the couch, and began "choking" her by putting both his hands around her throat with his thumbs to the front. He put "pressure" on her throat, and VanZant could not breathe for "a few seconds." She believed she was going to die. While Hopper was choking VanZant, his face was "wild" and "mad," and he called her a "stupid bitch." After Hopper released VanZant, he told her to "clean [herself] up." VanZant saw that her mouth was bleeding and that her face was bruised and swollen.

The second assault happened on January 23, 2014, during a different argument at Hopper's house, which arose after Hopper suspected VanZant had talked to the police after the first assault. Hopper again hit VanZant in the head with his fist "a bunch" of times and then convinced VanZant to "go somewhere" in his truck. Hopper was "very upset" and began to tell VanZant that he would do to her "what they did to people that were snitches." When VanZant tried to roll down the window and call for help from passing motorists, Hopper hit her again. Hopper finally stopped the truck, removed VanZant from the truck, and began "punching" her. When VanZant could no longer stand, Hopper pulled her back to

5

the truck by her hair and "shoved" her into his truck in the floorboard. Hopper sat on top of VanZant and began "choking" her by "squeezing [her] neck." VanZant's arms went numb, her peripheral vision failed, and she began to black out. VanZant believed she was going to die. She finally was able to press her thumb into Hopper's eye until he released her. VanZant experienced nausea, vomiting, and shortness of breath after the attack and also had bruising on her neck and hemorrhages in her eyes.

A forensic nurse examiner, Tiffanie Dusang, testified as an expert on strangulation. She reviewed VanZant's medical records and pictures of her injuries after the January 23, 2014 assault and concluded that they were consistent with VanZant being strangled. Similarly, Green's injuries—bruising on her neck and jaw—were consistent with Hopper using his hands on her neck and jaw as Green had testified. Dusang opined that a victim's estimates of how long such an episode occurred would not be reliable because it would be a "traumatic situation." Dusang testified that a person could use his hands in a manner that is capable of causing death or serious bodily injury. Based on Green's and VanZant's testimonies, which Dusang heard, she concluded that Hopper had used his hands as a deadly weapon during some of the assaults. The jury concluded that the manner in which Hopper had used or intended to use his hands was capable of causing death or serious bodily injury.

## C. APPLICATION

A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann.

6

§ 1.07(a)(17)(B). Body parts, such as hands, may be deadly weapons based on their manner of use or intended use and their capacity to produce death or serious bodily injury. *See Turner v. State*, 664 S.W.2d 86, 90 (Tex. Crim. App. [Panel Op.] 1983) ("[A] fist or hands are not 'deadly weapons' per se but can become such only in the manner used depending upon the evidence shown."). The State was not required to prove that Hopper actually intended to cause serious bodily injury or death or that his hands actually caused serious bodily injury or death. *See Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008); *McCain*, 22 S.W.3d at 503; *Brooks v. State*, 900 S.W.2d 468, 472 (Tex. App.—Texarkana 1995, no pet.). As long as the totality of the evidence showed that Hopper's hands were capable of causing serious bodily injury or death in the manner Hopper used them, the jury was authorized to find that Hopper's hands qualified as a deadly weapon under Texas Penal Code section 1.07. *See Tucker*, 274 S.W.3d at 691; *McCain*, 22 S.W.3d at 503; *Jefferson v. State*, 974 S.W.2d 887, 892 (Tex. App.—Austin 1998, no pet.); *see also Quincy v. State*, 304 S.W.3d 489, 499–500 (Tex. App.—Amarillo 2009, no pet.) ("In determining whether an object is a deadly weapon, the jury may consider all the surrounding facts, including the defendant's words and whether the victim feared death or serious bodily injury."). The totality of the evidence that a fact-finder may consider in determining whether an object was used as a deadly weapon includes the physical proximity between the victim and the object, any threats or words used by the defendant, the manner in which the defendant used the object, testimony by the victim that she feared death or serious bodily injury, and

7

testimony that the object had the potential to cause death or serious bodily injury. *Brown v. State*, 716 S.W.2d 939, 946 (Tex. Crim. App. 1986); *In re S.B.*, 117 S.W.3d 443, 446–47 (Tex. App.—Fort Worth 2003, no pet.).

The evidence at trial revealed that Hopper attempted to impede the breathing of both Green and VanZant with his hands and that he hit them repeatedly with his hands and fists. When Hopper held his hand over Green's nose and mouth, she was afraid she would die and was in danger of losing consciousness. Hopper dragged Green out of his truck by her neck and attempted to "rip" her jaw off. Green had bruising and a bleeding lip after one of Hopper's attacks. Hopper's attacks on VanZant were even more brutal. Hopper grabbed VanZant around the throat to choke her, and VanZant could not breathe for a few seconds. Hopper was "wild," "mad," and cursed her while choking her. The second time Hopper strangled VanZant, she lost feeling in her arms, and her vision began to completely fade away before she was able to escape. Hopper had implied that he would kill her because she was a "snitch." VanZant's symptoms after this attack, including petechial hemorrhaging and bruising around her neck, were consistent with manual strangulation. VanZant testified that she believed she was going to die during these attacks. Dusang, an expert in strangulation, testified that VanZant's and Green's injuries were consistent with being strangled and that Hopper, by impeding their airways with his hands, used his hands in a manner that was capable of causing serious bodily injury or death.

This quantum of evidence is sufficient to support the jury's deadly-weapon finding. *See, e.g.*, *Lane*, 151 S.W.3d at 191–92 (holding evidence sufficient that

8

hand was used as deadly weapon in assault because defendant hit victim with his fist, victim suffered a concussion and loss of consciousness, and experts testified that a closed fist striking a person's head could cause serious physical injury); *Brantley v. State*, No. 05-13-00225-CR, 2014 WL 545514, at *3 (Tex. App.—Dallas Feb. 10, 2014, no pet.) (mem. op., not designated for publication) (holding sufficient evidence supported deadly-weapon finding because defendant used his forearms to choke the victim, defendant straddled her to hit her in the face and head, and victim thought she was going to die or suffer serious bodily injury); *Quincy*, 304 S.W.3d at 500–01 (finding evidence sufficient to support hands-as-a-deadly-weapon finding because defendant was larger than victim, defendant grabbed victim around the throat causing bruising, defendant hit the victim in the head and back, and police officer testified that defendant used his hands as a deadly weapon based on victim's injuries); *Goode v. State*, No. 03-10-00254-CR, 2011 WL 477038, at *5 (Tex. App.—Austin Feb. 9, 2011, no pet.) (mem. op., not designated for publication) (holding evidence was sufficient to support conviction for family violence with a deadly weapon because victim's injuries were consistent with strangulation, victim testified she was afraid she would die, and expert testified hands are capable of causing death or serious bodily injury); *Hemphill v. State*, No. 08-03-00054-CR, 2004 WL 722247, at *4–5 (Tex. App.—El Paso Apr. 1, 2004, pet. ref'd) (mem. op., not designated for publication) (holding evidence sufficient to support finding that defendant's hands were deadly weapon because defendant choked smaller victim, victim had bruised neck, victim believed she would die, and expert testified hands were

9

capable of causing serious bodily injury); *cf. Judd v. State*, 923 S.W.2d 135, 140 (Tex. App.—Fort Worth 1996, pet. ref'd) (holding indictment allegation that defendant caused victim's death by choking her with his hand was sufficient notice that State would seek a deadly-weapon finding). Based on the rational inferences the jury could have drawn from the admitted evidence, the evidence is sufficient to show that Hopper used his hands in a manner that was capable of causing death or serious bodily injury. *See Petruccelli v. State*, 174 S.W.3d 761, 770 (Tex. App.—Waco 2005, pet. ref'd) (op. on reh'g), *cert. denied*, 549 U.S. 839 (2006). We overrule the remaining portion of Hopper's second point.

## III. ERROR IN THE JUDGMENT

The issue of Hopper's guilt or innocence was decided by a jury, but the trial court heard punishment evidence and assessed Hopper's punishment. The nunc pro tunc judgment[1] reflects that the jury found Hopper guilty and assessed his punishment. Although Hopper does not attack this portion of the trial court's judgment, we may modify a judgment sua sponte to reflect the truth of the underlying proceeding. *See* Tex. R. App. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Therefore, the judgment should be modified to reflect that the trial court assessed Hopper's punishment. *See* Tex. Code Crim. Proc. Ann. art. 42.01, § 1(8) (West Supp. 2015).

---

[1]The original judgment reflected that Hopper waived his right to a jury trial and that the trial court found Hopper guilty of the offense and assessed his punishment.

## IV. CONCLUSION

Hopper did not preserve his complaints directed to the prosecutor's closing jury arguments or the constitutionality of article 42.12 as applied to his hands, and we conclude that the evidence was sufficient to support the jury's deadly-weapon finding. Even so, we modify the judgment to reflect that the trial court assessed Hopper's punishment. As modified, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(b).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: DAUPHINOT, GABRIEL, and SUDDERTH, JJ.

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED: January 14, 2016

11