

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00142-CR

MICHAEL JERRIAL IBENYENWA                 APPELLANT

V.

THE STATE OF TEXAS                             STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

----------

## OPINION ON STATE'S MOTION FOR REHEARING

----------

After considering the State's motion for rehearing, we grant the motion; we withdraw our prior opinion, concurring and dissenting opinion, and judgment of December 15, 2011, and we substitute the following opinion, concurring and dissenting opinion, and judgment of the same date to clarify the proper disposition of counts two through five.

In three points, appellant Michael Jerrial Ibenyenwa appeals from one conviction for continuous sexual abuse, two convictions for aggravated sexual assault, and two convictions for indecency with a child. He contends (a) that the

statute allowing for the offense of continuous sexual abuse is unconstitutional because it allows for a conviction upon a nonunanimous jury vote as to the particular offenses constituting the elements of the crime, (b) that the trial court reversibly abused its discretion by allowing the entirety of the child complainant's interview to be viewed by the jury after the defense's cross-examination of the interviewer, and (c) that the aggravated sexual assault and indecency convictions are barred by double jeopardy. We affirm in part and reverse in part.

## Constitutionality of Section 21.02 of the Penal Code

In his third point, appellant contends that the continuous sexual abuse statute is unconstitutional under Article V, section 13 of the Texas Constitution, and the Sixth Amendment of the United States Constitution as applied to states through the Fourteenth Amendment, because it violates the jury unanimity requirement set forth in those provisions. Appellant challenges the constitutionally of the statute both facially and as applied. Appellant raised neither challenge in the trial court.

A facial challenge to the constitutionality of a statute is a forfeitable right, that is, it may be lost by the "failure to insist upon it by objection, request, motion, or some other behavior." *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009); *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (1997). Although the four-judge concurrence in *Karenev* held that the requirement that a facial challenge to a statute be preserved is not absolute, the five-judge majority plainly

2

stated that "[a] facial challenge to the constitutionality of a statute falls within the third [*Marin*] category" and that "a defendant may not raise for the first time on appeal a facial challenge to the constitutionality of a statute." 281 S.W.3d at 434. We are bound to follow the majority opinion in the absence of language adopting the concurrence. *Cf. Haynes v. State*, 273 S.W.3d 183, 186 (Tex. Crim. App. 2008) (relying on United States Supreme Court authority holding that a majority opinion is one in which a single rationale enjoys the support of at least five judges). Similarly, an "as applied" constitutional challenge is also a forfeitable right under *Marin* and must be preserved in the trial court during or after trial. *Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995); *Garcia v. State*, 887 S.W.2d 846, 861 (Tex. Crim. App. 1994), *cert. denied*, 514 U.S. 1005 (1995); *see also State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011) (holding that as applied challenge raised in pretrial motion is not sufficient to preserve issue for review).

Accordingly, we conclude and hold that appellant did not preserve his facial and as applied challenges to section 21.02 for our review. *See Karenev*, 281 S.W.3d at 434; *Curry*, 910 S.W.2d at 496; *Williams v. State*, 305 S.W.3d 886, 893 (Tex. App.—Texarkana 2010, no pet.).

We overrule appellant's third point.

**Optional Completeness**

In his first issue, appellant complains that the trial court abused its discretion under rules of evidence 107 and 403 by admitting the entirety of the child's interview in response to questioning by the defense.

Rule 107 permits the introduction of previously inadmissible evidence when that evidence is necessary to fully explain a matter that has been raised by the adverse party. Tex. R. Evid. 107; *Walters v. State*, 247 S.W.3d 204, 217–18 (Tex. Crim. App. 2007). It is designed to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing. *Walters*, 247 S.W.3d at 218. Rule 107 does not permit the introduction of other similar, but inadmissible, evidence unless necessary to explain properly admitted evidence. *Id*. Further, the rule is not invoked by the mere reference to a document, statement, or act. *Id*. And rule 107's scope is limited by rule 403, which permits a trial judge to exclude otherwise relevant evidence if its unfair prejudicial effect or its likelihood of confusing the issues substantially outweighs its probative value. *Id*.

The State called as a witness Stephanie Nick, a forensic interviewer who interviewed the child. Nick did not have her notes regarding the interview, but she did refresh her memory with a copy of a police report that the prosecutor represented had the interview "basically . . . transcribed."[1] According to Nick, the

---

[1] The report was not admitted into evidence.

4

child was able to tell her "where it happened, specifically what room it happened in, who was present, those sorts of things." Nick testified that the child remembered details such as that she was in kindergarten when the acts started, that her clothes were off, and that "she was asked if it felt good."[2] After asking Nick about the types of sensory details a child might remember, such as whether a penis was hard or soft or whether anything came out of it, the prosecutor asked whether the child was able to remember sensory details, and Nick answered "Yes." Nick also testified that the child did not show signs of having been coached in her answers. According to Nick, the child identified appellant as the perpetrator and denied that anyone else had abused her.

On cross-examination, Nick agreed with defense counsel that she was not supposed to ask leading questions of the child, and then defense counsel asked her, "So you wouldn't consider [the question], 'Did anything come out of his private' to be leading?" Nick answered, "No. That's a yes or no question." In addition, the following exchange occurred:

Q. During your interview with [the victim], she didn't remember what happened the first time that the alleged incident happened, did she?

A. That's correct, she did not.

Q. And she didn't remember what happened the last time the alleged incident happened.

A. She gave details as to what happened the last time.

---

[2]Appellant did not object to this evidence.

5

Q.     Didn't she initially say, "I don't remember"?

A.      . . . Yes, she did initially say she did not remember.

Q.     Okay.  And your interview was only eight days after the last incident allegedly occurred.

A.     That, I don't know.

Q.     So you didn't know the . . . alleged incident was January 22nd. That's in your notes.

A.     I don't have . . . my handwritten notes aren't here.  What I do know is that she told me it happened in January of 2009.  If she gave the exact date in the interview, I don't know.

Q.     Okay.  She seemed to have a decent memory, right?

A.     Uh-huh.

Q.     She remembered her kindergarten teacher's name, right?

A.     Yes, she did.

Q.     She remembered things around Halloween of the year before, right?

A.     Correct.

Q.     And she remembered her mom fixing coworkers' hair.

A.     Yes.

Q.     But she doesn't remember what happened the first or the last time you initially asked her.

A.     That's correct.  She said she did not remember.

Defense counsel also questioned whether Nick was trained to repeat the child's answers during an interview; she said yes, she was so trained, for the

6

purpose of clarifying and assisting whoever is watching the interview (such as an investigator) because sometimes the audio is bad. She denied that the technique was for the purpose of "reinforc[ing] the same thing over and over and over with the child." Defense counsel asked Nick whether she would be surprised that she had repeated the child's answers 124 times during the 37 minute interview, and she answered yes. In addition, the investigator denied that she was trained to ask the same question repeatedly if the first answer was no. When asked, "So you would be surprised to know you did that numerous times in your interview?," the investigator could not recall.[3]

When the State redirected, it asked to admit exhibit 34, the recording of the videotaped interview, into evidence. Defense counsel objected on grounds that "our main concern, Judge, is that they are going to now hear a complete 37 minutes of what we spent just asking one or two questions on, maybe two or three questions on, that . . . those [follow-up] questions can be asked by the State." The State argued that the entire interview was admissible under rule 107 because the defense's questions gave the impression that the child was lying and that the interviewer was reinforcing the child's testimony. The defense intimated that it did not mind if the State asked follow-up questions regarding the interview and the circumstances of the child's not being able to recall certain incidents but that the entire interview should not be admitted.

---

[3]The defense had also asked similar questions of a prior witness, Detective Garth Savage, who had watched the interview in another room.

We agree with the State that the defense left the impression that Nick had possibly manipulated the interview by asking repetitive questions even though she was not supposed to and that she excessively repeated the child's answers. Although the defense argued that the State should just be allowed to ask follow-up questions, the jury would not have had any yardstick by which to measure the effect of Nick's questions and techniques on the child, which occurred before the child testified at trial, other than by seeing the actual interview. *See Mick v. State*, 256 S.W.3d 828, 830–32 (Tex. App.—Texarkana 2008, no pet.). And we cannot agree that the defense's line of questioning regarding the interviewer's techniques was "minimal." We conclude and hold that the trial court did not abuse its discretion by admitting the interview under rule 107. Thus, we must further review whether the trial court abused its discretion by admitting the evidence over appellant's rule 403 objection.

Once an appellant objects on rule 403 grounds, the trial court must weigh the probative value of the evidence to determine if it is substantially outweighed by its potential for unfair prejudice. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997); *Alami v. State*, 333 S.W.3d 881, 889 (Tex. App.—Fort Worth 2011, no pet.). A rule 403 balancing test includes the following factors: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the

evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006); *Alami*, 333 S.W.3d at 889. The rules of evidence favor the admission of relevant evidence and carry a presumption that relevant evidence is more probative than prejudicial. *Jones v. State*, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 832 (1997).

The interview was inherently probative to the issue of whether Nick's technique amounted to "coaching" the child and was the only evidence of whether the child equivocated in the interview. Although she initially told Nick that she did not remember what had happened, when asked whether she really did not remember or whether she just did not want to talk about what had happened, she admitted that she did not want to talk about what had happened. Thus, the interview was inherently probative and necessary for the rule 107 purpose for which it was admitted.

Moreover, it was unlikely to distract the jury from the issues in the case. The child told the interviewer that appellant put his private in her mouth more than once but less than five times, that when he did that "clear stuff" came out and it was salty, that appellant put his private in her private so many times she lost count, that he touched his private in front of her and made her touch his private, and that he put his finger inside her private. She had testified to these

9

same things previously with most of the same detail with the exception of four things: (1) she testified that appellant put his finger on her private rather than inside, which she said in the interview, (2) she testified that appellant had put his private on her "butt," which she did not say in the interview, (3) in the interview, she said that appellant asked her when he was doing those things if they felt good, but she did not testify to that at trial, and (4) in the interview she had said that there were yellow sheets on the guest room bed at appellant's mother's house, but at trial, she testified that she thought they were white sheets. The issue of her credibility had been previously raised by the defense's cross-examination in which the attorney asked questions regarding whether the child was happy her mother was living with appellant and whether she liked being with her aunt and uncle better.[4] Although the recorded interview could be viewed as bolstering the child's credibility because her answers in the interview were mostly consistent with her testimony at trial, there were some inconsistencies, which the jury was allowed to reconcile. Moreover, that was not the sole purpose for which the DVD interview was admitted; as a result of the admission of the interview, the jury was allowed to resolve for itself whether it believed the child had been coached by Nick, her mother, or someone else. Finally, the DVD was only about forty minutes long, so there was little danger of it taking an undue amount of time from the remainder of the trial. Accordingly, we conclude and hold that the trial

---

[4]At closing, however, the defense argued to the jury that there was no dispute that the child had been sexually assaulted, but the issue was by whom.

10

court did not abuse its discretion by admitting the evidence over appellant's rule 403 objection.

Because we conclude and hold that the trial court did not abuse its discretion by admitting the interview under rules 107 and 403, we overrule appellant's first point.

## Double Jeopardy

The State concedes that if we overrule appellant's first and third points so as to affirm appellant's conviction on count one, the continuous sexual abuse count, we must reverse the remainder of the convictions for aggravated sexual assault and indecency with a child. *See* U.S. Const. amend. V; Tex. Const. art. I, § 14; Tex. Penal Code Ann. § 21.02(e) (West Supp. 2011). Accordingly, we sustain appellant's second point and vacate those four convictions as set forth below.

## Conclusion

Having overruled appellant's first and third points, we affirm his conviction under count one for continuous sexual abuse. Having sustained his second point, we vacate his convictions on counts two through three for aggravated sexual assault and counts four through five for indecency with a child. *See* Tex. R. App. P. 43.2(c); *Ball v. United States*, 470 U.S. 856, 865, 105 S. Ct. 1668, 1674 (1975).

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT, J.; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

DAUPHINOT, J., filed a concurring and dissenting opinion.

PUBLISH

DELIVERED: March 22, 2012



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00142-CR

---

MICHAEL JERRIAL IBENYENWA                                    APPELLANT

V.

THE STATE OF TEXAS                                               STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

----------

## CONCURRING AND DISSENTING OPINION
## ON STATE'S MOTION FOR REHEARING

----------

I agree with the State and the majority that affirming the conviction on count one requires vacating the remainder of the convictions. But because the majority has borrowed the *Karenev* majority's overly broad brush to paint its analysis in affirming that conviction,[1] I must respectfully dissent.

I adopt the *Karenev* concurring opinion, written by Judge Cochran and joined by Judges Price, Womack, and Johnson, because it is a clear, concise,

---

[1]*See Karenev v. State*, 281 S.W.3d 428, 432–34 (Tex. Crim. App. 2009).

and more artfully drafted explanation of why technicalities should not trump the

Constitution than I am capable of writing:

> There are two good reasons why appellate courts should entertain a facial challenge to the penal statute setting out the offense for which the defendant was convicted, even when it is raised for the first time on appeal:

> (1) American law prohibits the conviction and punishment of a person under an unconstitutional penal statute; in other words, it is an "absolute requirement" that a person be criminally punished only for the violation of a valid penal law; and

> (2) Appellate courts are in at least as good a position as trial courts to review the purely legal question of whether a particular penal statute is facially unconstitutional.

> First, I do not think that the majority is suggesting that it is quite acceptable to send someone to prison for violating an unconstitutional penal statute if that person failed to object to the statute's unconstitutionality in the trial court. But its language could well be misconstrued as allowing persons who are not guilty of violating any valid penal statute to be punished nonetheless if they failed to complain soon enough. The moral of that story would be: Because you were a slowpoke at noticing that you were not guilty of any valid criminal offense, we will punish you as if you really were guilty of some valid criminal offense. That is not the American way: every person has an absolute, fundamental, and unforfeitable right to be punished only for the violation of a valid criminal statute.

> Second, the general rationale for requiring an objection in the trial court to preserve error on appeal simply does not apply when the claim is that the penal statute is facially unconstitutional and cannot be used to punish any person, now or in the future. The two main reasons for requiring a contemporaneous objection in the trial court are (1) to give the opposing party an opportunity to respond or cure the problem before it becomes error; and (2) to give the trial judge an opportunity to prevent the error from occurring. A third rationale is that "judicial economy requires that issues be raised first in the trial court to spare the parties and the public the expense of a potentially unnecessary appeal."

2

The first two rationales do not apply when a penal statute defining the criminal offense is facially unconstitutional in its entirety. The statute cannot be repaired by the parties or the trial judge. The only two options at the trial level are to dismiss the charges or proceed with the prosecution.

The third rationale, conservation of scarce judicial resources, does apply when the prosecutor or judge agrees with the defendant that the penal statute is facially unconstitutional, the charges are dismissed, and there is no appeal from dismissal. But the likelihood of that occurring is minuscule. Trial judges very rarely declare a penal statute unconstitutional; prosecutors would generally be remiss if they failed to appeal a ruling that a legislatively enacted penal statute was unconstitutional and therefore unenforceable; and public policy is best served by a published appellate decision declaring a penal statute facially unconstitutional and therefore unenforceable against any person. Thus, while it is conceivable that requiring a defendant to complain of a penal statute's facial unconstitutionality in the trial court might save some [scarce] judicial resources, that expense is a very small price to pay when balanced against the bedrock American notion that we do not convict and punish people for unconstitutional crimes. Surely this Court would not, after the Supreme Court's decision in *Lawrence v. Texas*, uphold a sodomy conviction today even though the defendant had not complained in the trial court about the unconstitutionality of the "still in the books" sodomy statute.[2]

If, as the majority holds in reliance on the five-judge majority in *Karenev*, a person may be convicted of and sentenced to prison for violating a piece of legislation that is repugnant to the Constitution solely because the trial lawyer failed to make timely objection, we allow the protections of our Constitution to be usurped by procedural technicalities. Is this another issue that cannot be raised on direct appeal but may be raised by writ of habeas corpus? Is this really the way we want to expend the overstretched resources of our judiciary, which

---

[2]*Id.* at 436–40 (Cochran, J., concurring) (citations omitted).

although a branch of government equal to the legislative and the executive branches,[3] in its entirety is financed by only .373% of the total state budget?[4]

In our history, we have made slavery legal, and our courts have upheld laws criminalizing miscegenation[5] and sodomy.[6] Often our communities believed these laws were proper, and lawyers would not object to their constitutionality because the laws were accepted by the community of which the lawyer was a member.

What vehicle for objection does a defendant in a criminal case have for making his objection to a law he believes to be unconstitutional if his lawyer disagrees and refuses to object or simply fails to make the objection? Although the Texas Constitution provides that "[i]n all criminal prosecutions the accused shall have . . . the right of being heard *by himself or counsel, or both* . . . ,"[7] courts repeatedly deny the accused this right, holding that a defendant is not entitled to

---

[3]Tex. Const. art. II, § 1.

[4]Conference Comm., Report (3rd printing), Tex. H.B. 1, 82nd Leg., R.S. (May 26, 2011), *available at* http://www.lbb.state.tx.us/Bill_82/4_Conference/prt HB1_Conference_2011_SIG_Engross.pdf.

[5]*See, e.g., Frasher v. State*, 3 Tex. Ct. App. 263, 276–78 (1877) (upholding former article 386 of our criminal code).

[6]*Lawrence v. State*, 41 S.W.3d 349, 357–59, 362 (Tex. App.—Houston [14th] 2001, pet. ref'd), *rev'd*, 539 U.S. 558, 578–79, 123 S. Ct. 2472, 2483–84 (2003).

[7]Tex. Const. art. I, § 10 (emphasis added).

4

"hybrid representation."[8]  The defendant himself can make no objection that will preserve any complaint if that defendant is represented by counsel who either does not realize there is a constitutional issue or does not believe that the statute violates constitutional protections.

While I agree that a statute that is unconstitutional only as applied to a defendant requires objection to bring the issue to the attention of the trial court, a statute that is unconstitutional on its face can only be void and no statute at all. Convicting a defendant of violating a void statute would be similar to convicting a person of an offense that does not appear in our penal statutes.  Does anyone really believe that it is proper to convict a person of an act that does not appear in our penal statutes merely because there is no objection?

This court is bound by the precedent established by the Texas Court of Criminal Appeals, and the conscientious majority has followed the five-judge majority in *Karenev.*  I would hold, as has been the law for many years, that a law that is facially unconstitutional is void[9] and may be challenged at trial, on direct

---

[8]*See, e.g., Ex parte Bohannan,* 350 S.W.3d 116, 116 n.1 (Tex. Crim. App. 2011).

[9]*Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 760, 115 S. Ct. 1745, 1752 (1995) (Scalia, J., concurring) ("[A] law repugnant to the Constitution is void, and is as no law.") (citation and internal quotation marks omitted); *Ex parte Yarbrough (The Ku Klux Klan Cases*), 110 U.S. 651, 654, 4 S. Ct. 152, 153 (1884); *Ex parte Siebold*, 100 U.S. 371, 375–377 (1879); *Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001) (stating that a defendant is entitled to file for pretrial habeas relief when he alleges "that the statute under which he . . . is prosecuted is unconstitutional on its face; consequently, there is no valid

appeal, by writ of habeas corpus, or in any other way, regardless of preservation, especially if the statute has been held to be facially unconstitutional after the filing of the appellate brief but before the opinion is handed down.  I agree with the concurring judges in *Karenev* that

> appellate courts should entertain a facial challenge to the penal statute setting out the offense for which the defendant was convicted, even when it is raised for the first time on appeal:
>
> (1) American law prohibits the conviction and punishment of a person under an unconstitutional penal statute; in other words, it is an "absolute requirement" that a person be criminally punished only for the violation of a valid penal law; and
>
> (2) Appellate courts are in at least as good a position as trial courts to review the purely legal question of whether a particular penal statute is facially unconstitutional.[10]

I would so hold, and because the majority does not, I must respectfully dissent.

LEE ANN DAUPHINOT<br>
JUSTICE

PUBLISH

DELIVERED:  March 22, 2012

---

statute and the charging instrument is void"); *Rabb v. State,* 730 S.W.2d 751, 752 (Tex. Crim. App. 1987), *abrogated by Karenev*, 281 S.W.3d at 434.

[10]*Karenev,* 281 S.W.3d at 436–38 (Cochran, J., concurring) (citations omitted).