

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00123-CR

———————————————

SISHIR POKHREL, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1800039

---

Before Sudderth, C.J.; Kerr and Wallach, JJ.
Opinion by Justice Wallach

## OPINION

## I. Introduction

When D.B., the complainant,[1] decided to break up with Appellant Sishir Pokhrel, he refused to accept her decision. Instead, he threatened to publish intimate photos of her on a pornographic website and to send the photos to her parents if she did not continue to date him. The State charged Pokhrel with one count of unlawful disclosure or promotion of intimate visual material, a state-jail felony. *See* Tex. Penal Code Ann. § 21.16(c), (g). Although he pled not guilty, a jury found him guilty and assessed his punishment at 20 months' confinement in state jail and a $10,000 fine. *See id.* § 12.35(a)–(b) (setting out state-jail felony punishment range).

In a single issue,[2] Pokhrel raises a constitutional challenge to Subsection (c) of Penal Code Section 21.16, the "revenge porn" statute. *See* Tex. Penal Code Ann.

---

[1]We use initials to protect the complainant's privacy. *See* Tex. R. App. P. 9.8 cmt. (stating that Rule 9.8 "does not limit an appellate court's authority to disguise parties' identities in appropriate circumstances in other cases"); *see also* Tex. Const. art. I, § 30(a)(1) (stating that crime victims have the right "to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process").

[2]In unrelated and un-numbered issues, characterized by Pokhrel on pages four and five of his six-page brief as "Additional Points of Error" and without—in most instances—any legal argument or citation to supporting authority, *cf.* Tex. R. App. P. 38.1, Pokhrel also complains that during the trial's guilt–innocence phase, State's Exhibits 1–25 and extraneous-offense testimony were improperly admitted; that the punishment charge failed to inform the jury that it could recommend probation; and that the trial court ignored or ambiguously addressed his objections. To the extent the record reflects that Pokhrel preserved any of these complaints, we overrule them as inadequately briefed. *See id.*; *see also* Tex. R. App. P. 33.1 (setting out preservation requirements); Tex. R. Evid. 901(b)(1) (explaining authentication through testimony of

§ 21.16(c); *Ex parte Jones*, No. PD-0552-18, 2021 WL 2126172, at \*1 (Tex. Crim. App. May 26, 2021) (not designated for publication) (describing the "classic 'revenge porn' scenario" as "two people take intimate sexual photographs, and one person decides to post them on the Internet without the consent of the other"). We will affirm.

## II. Discussion

Under Section 21.16(c), a person commits an offense if the person

intentionally threatens to disclose, *without the consent* of the depicted person, visual material depicting another person with the person's intimate parts exposed or engaged in sexual conduct and the actor makes the threat to obtain a benefit:

(1) in return for not making the disclosure; or

(2) in connection with the threatened disclosure.

Tex. Penal Code Ann. § 21.16(c) (emphasis added). Pokhrel's indictment alleged that on or about June 13, 2023, he "did without the consent of [D.B.], intentionally threaten to disclose visual material depicting [D.B.] with [her] intimate parts exposed, namely

---

a witness with knowledge); *Butler v. State*, 459 S.W.3d 595, 605 (Tex. Crim. App. 2015) (explaining that Rule 901 merely requires sufficient evidence to support authentication and "does not ordinarily require the trial court to make a threshold determination of the credibility of the evidence proffered by the proponent to establish authenticity"); *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012) ("Evidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence.").

her buttocks, or engaged in sexual conduct, and the threat was made to obtain a benefit

in connection with the threatened disclosure."[3] *See id.*

During the trial's guilt–innocence phase, after the State rested, the following

colloquy occurred between the trial court and the parties:

> THE COURT: . . . Is there anything the Defense needs to put on the record prior to the jury coming back in?
>
> [Defense counsel]: Yes, Judge. Just want to make note for preservation and appellate purposes about the statute that he's being charged under, consider it unconstitutional. It's -- if I'm not mistaken, it is missing some other culpable mind states as far as knowingly, recklessly, and negligently, Your Honor. It only speaks to intentional, which may consider that statute as a strict liability statute.
>
> THE COURT: Okay. Thank you. The Court has -- well, State, do you have any comment on that?
>
> [Prosecutor]: No, Your Honor. I don't. We would argue that -- I mean, if this is for preservation of an appellate issue later, I understand. I believe the statute is constitutional, but yeah. That's all I have to say.
>
> THE COURT: There is limited preceden[t] on this case, but there is a case out of Houston that comments on that, so the Court is going to follow that precedential value and overrule the Defendant's objection; but it is preserved for your review later on, for appellate review later on if you so wish, and if that becomes necessary.

The charge contained most of the statutory definition of "intentionally."[4] It

defined "consent" as "assent in fact, whether express or apparent."

---

[3]Because Pokhrel does not challenge the sufficiency of the evidence to support his conviction, we will not discuss the underlying facts except where necessary to address his arguments. *See* Tex. R. App. P. 47.1.

[4]The charge excluded the italicized portion: "A person acts intentionally, or with intent, with respect to the nature of his conduct *or to a result of his conduct* when it is his

4

## A. The parties' arguments

Pokhrel argues in his "Issue Presented" that Section 21.16(c), "[a]s applied to [him], violates constitutional due process principles because it imposes criminal liability without proof of intent, effectively rendering it a strict liability offense," and he asks in his prayer for the court to hold that Section 21.16(c) "is unconstitutional as applied." He further argues that Section 21.16(c) "is unconstitutional because it fails to require proof of mens rea" in that it "does not clearly require that the accused knows or believes that the depicted person did not consent" and that it "criminalizes threats to disclose intimate material but fails to require a culpable mental state regarding consent or harm . . . open[ing] the door to criminalizing innocent conduct and chilling free speech."

The State responds that Section 21.16(c) is not an unconstitutional strict-liability offense because the lack-of-consent element has an implied culpable mental state. *See* Tex. Penal Code Ann. § 6.02(c) ("If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b), intent, knowledge, or recklessness suffices to establish criminal responsibility.").

## B. Facial and as-applied constitutional challenges

In a facial constitutional challenge, the claimant asserts that the complained-of law is unconstitutional "on its face," meaning that it operates unconstitutionally in all

---

conscious objective or desire to engage in the conduct or cause the result." Tex. Penal Code Ann. § 6.03(a) (emphasis added). Pokhrel does not complain about this omission.

of its potential applications. *Estes v. State*, 546 S.W.3d 691, 697–98 (Tex. Crim. App. 2018). Conversely, in an as-applied challenge, the claimant "concedes the general constitutionality of the statute[] but asserts that the statute is unconstitutional as applied to his particular facts and circumstances." *Id.* at 698. Resolving an as-applied challenge "requires a recourse to evidence." *Id.* Further, a litigant raising an as-applied challenge "must show that, in its operation, the challenged statute was unconstitutionally applied to him; that it may be unconstitutional as to others is not sufficient (or even relevant)." *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011) (orig. proceeding); *see Owens v. State*, No. PD-0075-24, 2025 WL 1587690, at *1 (Tex. Crim. App. June 4, 2025) (explaining that the merits of an as-applied challenge depend on the evidence— the challenger must show that the statute was unconstitutionally applied to him). Further, an as-applied constitutional challenge is a forfeitable right and must be preserved in the trial court during or after trial. *Ibenyenwa v. State*, 367 S.W.3d 420, 422 (Tex. App.—Fort Worth 2012, pet. ref'd) (op. on reh'g).

Although Pokhrel characterizes his appellate issue in his brief's "Issue Presented" and prayer as an as-applied constitutional challenge, he did not raise an as-applied complaint in the trial court, *cf.* Tex. R. App. P. 33.1,[5] or show in his brief that, based on the evidence at trial, the statute was unconstitutionally applied to him, *cf.* Tex.

---

[5]Neither party addresses preservation, *cf.* Tex. R. App. P. 33.1, but because it is a systemic requirement, we must independently do so, *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020).

R. App. P. 38.1. Accordingly, we overrule this portion of Pokhrel's sole issue as both unpreserved and inadequately briefed.

### 1. Implied mens rea

In the remainder of his first issue, Pokhrel contends that the statute fails to require proof of mens rea. Pokhrel preserved this portion of his complaint at trial when he asserted that the statute was unconstitutional because "it is missing some other culpable mind states as far as knowingly, recklessly, and negligently," and "only speaks to intentional, which may consider that statute as a strict liability statute."

A statute's constitutionality is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). The Court of Criminal Appeals has addressed the same implied mens rea issue in discussing the constitutionality of Subsection (b) of Section 21.16. *Jones*, 2021 WL 2126172, at *1; *see Ex parte Mora*, 634 S.W.3d 255, 256 (Tex. App.—Houston [1st Dist.] 2021, pet. ref'd) (adopting *Jones*'s reasoning, even though not precedential due to its unpublished status, because "as a practical matter its reasoning calls for the same result in this materially indistinguishable appeal").

In *Jones*, responding to a constitutional challenge to the statute's terms and to a facial challenge alleging overbreadth, the court reviewed an earlier version of Subsection (b), which provided that a person commits an offense if—as pertinent here—"*without the effective consent of the depicted person*, the person intentionally discloses visual material

7

depicting [her] with [her] intimate parts exposed or engaged in sexual conduct." 2021 WL 2126172, at *3, *5 (emphasis added).

The court identified Subsection (b) as setting out a content-based restriction on its face—thus making it subject to strict scrutiny—because it did not penalize all intentional disclosure but rather "penalizes only a subset of disclosed images—those which depict another person with the person's intimate parts exposed or engaged in sexual conduct." *Id.* at *6 ("The sexually explicit nature of the images is inextricable from the regulation; the harm results from the intimate nature of the content."). The court then determined that privacy set forth a compelling government interest because "the interest in sexual privacy is substantial" as the "most private human conduct." *Id.* at *7 ("Violations of sexual privacy are intrinsically harmful because sex is inherently private. The consequences of violations of sexual privacy can be serious and include harassment, job loss, and suicide."). Additionally, "disclosing visual material when the depicted person reasonably expected it would remain private is an intolerable invasion of privacy, especially when the visual material shows the depicted person's intimate parts or sexual conduct." *Id.* The court stated, "[T]here is no way to adequately prevent the harm from disclosure of intimate material without restricting the disclosure of intimate material." *Id.* at *15.

The court observed that Penal Code Section 6.03, which defines culpable mental states, specifically limits the application of the "intentional" mens rea to a conduct's nature and result, while the "knowing" and "reckless" mens reas can apply to a

8

*circumstance* surrounding conduct, such as a lack of effective consent. *Id.* at \*9.[6] That is,

"[s]ome form of culpability must apply" to the non-consent element because "[i]f the

culpable mental state only attaches to the act of disclosure, the lack of a culpable mental

state for the non-consent element effectively results in a constitutionally impermissible

strict-liability offense." *Id.* Because the court can infer a requisite culpable mental state

to avoid a statute's becoming an unconstitutional strict-liability crime, the court "can

presume the attachment of a culpable mental state to the character of the material to be

disseminated" because the statute "is susceptible to a narrowing construction as a

matter of statutory interpretation that allows it to survive a constitutional challenge."

*Id.* at \*10 ("[W]e can presume our Legislature intended the existence of the requisite

culpable mental state of knowledge or recklessness (but not intentional) to the lack-of-

consent element.").

---

[6]The Penal Code defines "knowing" as acting "with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist" and "with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." Tex. Penal Code Ann. § 6.03(b). The Penal Code defines "reckless" as acting "with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur," and the risk "must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.* § 6.03(c). Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged. *Id.* § 6.02(e).

The court then read into Section 21.16(b) a mens rea as to effective consent: "Section 21.16(b) criminalizes the disclosure of intimate visual material when the defendant (1) *knowing or being aware of a substantial and unjustifiable risk that he lacked the depicted person's effective consent . . . ." Id.* at *13 (emphasis added). The court reasoned as follows,

> [T]he lack-of-consent element narrows that statute's reach to an actor who intentionally discloses visual material despite knowing or being aware of a substantial and unjustifiable risk that the depicted person did not effectively consent to the disclosure. In those cases, the actor has, at the very least, some objective fair warning that the sensitive and potentially harmful speech he is about to utter is contrary to the wishes of the person who might be harmed by it. Providing criminal penalties for speech made in disregard of this fair warning is a narrowly tailored means to deter that speech—and only that speech—thereby vindicating, to the greatest extent constitutionally permissible, the depicted person's expectation of privacy.

*Id.*

Based on the court's 2021 interpretation of the lack-of-consent element in Subsection (b),[7] then, we will imply the same mens rea to prevent Subsection (c) from

---

[7]The issues in *Jones* were raised in a pretrial application for writ of habeas corpus in which the trial court denied relief and the Tyler court reversed, concluding that Subsection (b) was a content-based restriction that failed strict scrutiny and was overbroad under the First Amendment. 2021 WL 2126172, at *1. The Court of Criminal Appeals reversed the Tyler court's judgment and remanded the case "for consideration of [Jones's] remaining point of error on appeal," *id.* at *17, which was whether Subsection (b) was unconstitutionally vague on its face, *Ex parte Jones*, No. 12-17-00346-CR, 2022 WL 400827, at *1 (Tex. App.—Tyler Feb. 9, 2022, no pet.) (mem. op. on reh'g, not designated for publication). The Tyler court affirmed the trial court's denial of his habeas application, *id.* at *2–3, and later affirmed his conviction, *Jones v. State*, No. 12-22-00306-CR, 2023 WL 5663233, at *2–4 (Tex. App.—Tyler Aug. 31, 2023, no pet.) (mem. op., not designated for publication).

10

becoming an unconstitutional strict-liability crime: "A person commits an offense if [he] intentionally threatens to disclose, [*knowing or being aware of a substantial and unjustifiable risk that he lack*[*s*] *the depicted person's consent*,] visual material depicting [that person] with the person's intimate parts exposed . . . ." *See* Tex. Penal Code Ann. § 21.16(c) (emphasis added); *Jones*, 2021 WL 2126172, at *13.

## 2. Supreme Court authority

Although Pokhrel argues that the failure to require proof of mens rea makes the statute "constitutionally infirm under the holdings of *Lambert v. California*[, 355 U.S. 225, 78 S. Ct. 240 (1957),] and *Elonis v. United States*[, 575 U.S. 723, 135 S. Ct. 2001 (2015)]," these cases are inapposite. Pokhrel cites *Lambert* for the proposition that due process prohibits punishing individuals without fair notice and proof of culpability, but in *Lambert*, the defendant challenged the constitutionality of a municipal ordinance that was "wholly passive." 355 U.S. at 228, 78 S. Ct. at 243. The ordinance required a convicted person to register if staying in Los Angeles more than five days. *Id.* at 226, 78 S. Ct. at 242. During the seven years that the defendant lived there, she had been convicted of a felony. *Id.*, 78 S. Ct. at 242. After her arrest on suspicion of another offense, she was charged with violating the registration ordinance, and a jury found her guilty despite her constitutional objection. *Id.* at 226–27, 78 S. Ct. at 242.

In holding the ordinance unconstitutional, the Court observed the conduct at issue was unlike the commission of acts or the failure to act under circumstances that should "alert the doer to the consequences of his deed." *Id.* at 228, 78 S. Ct. at 243. The

11

Court stated that "[w]here a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process." *Id.* at 229–30, 78 S. Ct. 243–44. In contrast, in one of Pokhrel's texts to D.B., he stated, "[W]hat [I] am about to do is wrong, but remember that you left me no choice." Unlike the defendant in *Lambert*, then, the record reflects that Pokhrel knew he was committing wrongdoing at the time of the offense.

Pokhrel cites *Elonis* as an example of a threat statute struck down for lack of subjective intent. In *Elonis*, the Court reversed the defendant's conviction under 18 U.S.C. § 875(c), a statute making it a crime to transmit in interstate commerce "any communication containing any threat . . . to injure the person of another," when the jury was not charged with a mental state but rather was charged that the government need prove only that a reasonable person would regard the communications as threats. 575 U.S. at 726, 740, 135 S. Ct. at 2004, 2012. During trial, the defendant asked for but did not receive a jury instruction that the government had to prove that he intended to communicate a true threat. *Id.* at 732, 135 S. Ct. at 2007.

The Court observed that criminal statutes are generally interpreted to include broadly applicable scienter requirements, even where the statute by its terms does not contain them, but the defendant generally must know the facts that make his conduct fit the offense's definition. *Id.* at 734–36, 135 S. Ct. at 2009–10 (stating that when interpreting federal criminal statutes that are silent on the required mental state, the court reads into the statute "only that mens rea which is necessary to separate wrongful

12

conduct from 'otherwise innocent conduct'"). Under 18 U.S.C. § 875(c), the defendant had to know not only that he was transmitting a communication but also that it was threatening. *Id.* at 737, 135 S. Ct. at 2011 (stating that the crucial element separating legal innocence from wrongful conduct is the communication's threatening nature and that therefore the mental state requirement must "apply to the fact that the communication contains a threat").

Because the defendant had been charged under a negligence standard, the Court reversed his conviction. *Id.* at 737–38, 742, 135 S. Ct. at 2011, 2013. The Court further held that the mental-state requirement would be satisfied if the defendant had transmitted the communication "for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Id.* at 740, 135 S. Ct. at 2012. Unlike the *Elonis* defendant, Pokhrel's texts to D.B. showed that he knew his conduct was not innocent, including his message in which he stated to her, "[I]f you don't reach out to me tomorrow, I am going to mess up your whole life. [Y]ou will regret that you ever met me." He also texted her parents' names to her and then a text stating, "I will send the pornhub link tomorrow." We overrule this portion of Pokhrel's sole issue.

### 3. Overbreadth

To the extent Pokhrel has raised an overbreadth challenge,[8] the Court of Criminal Appeals also addressed that issue in *Jones.* 2021 WL 2126172 at *15. The

---

[8]"An overbreadth challenge is a First-Amendment-based facial challenge contending that a statute substantially prohibits or chills protected activity in relation to

13

purpose of the overbreadth doctrine is to prevent the chilling of future speech, but the court will only strike a law as overbroad if no limiting construction can be placed on the statute. *Id.* The person challenging the statute must demonstrate from its text and from actual fact that a substantial number of instances exist in which the law cannot be applied constitutionally. *Id.* at *16. The appellant failed to do so in *Jones*, *see id.* at *17, and Pokhrel has likewise failed to do so. *See* Tex. R. App. P. 33.1, 38.1. Accordingly, we overrule the remainder of his sole issue.[9]

## III. Conclusion

Having overruled Pokhrel's sole issue, we affirm the trial court's judgment.

---

its 'plainly legitimate sweep.'" *Ex parte Couch*, 651 S.W.3d 523, 526 n.1 (Tex. App.—Fort Worth 2022), *aff'd*, 678 S.W.3d 1 (Tex. Crim. App. 2023).

[9]Like our sister courts, we rely on *Jones* because, as a practical matter, its reasoning applies to the challenge before us. *See Mora*, 634 S.W.3d at 256 (adopting *Jones* reasoning as its own); *see also Ex parte Limberger*, No. 01-21-00532-CR, 2023 WL 2655749, at *2 (Tex. App.—Houston [1st Dist.] Mar. 28, 2023, no pet.) (mem. op., not designated for publication) (noting that in *Mora* and another case, the court had adopted the *Jones* reasoning); *Jones*, 2023 WL 5663233, at *2 (same); *Ex parte Mills*, No. 05-22-00814-CR, 2023 WL 3220939, at *2 n.1 (Tex. App.—Dallas May 3, 2023, no pet.) (mem. op., not designated for publication) (counting cases). *Compare Ex parte Fairchild-Porche*, 638 S.W.3d 770, 791 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (using the *Jones* reasoning but stating, with reference to Rule of Appellate Procedure 77.3, "We do not use the high court's opinion in *Ex parte Jones* as authority"), *with id.* at 793–94 (Spain, J., concurring) (observing that the court essentially followed the *Jones* opinion and complaining that the court had no choice "when the high court writes 43 pages that effectively rewrite Penal Code section 21.16(b) to avoid constitutional infirmities created by another department of government, then takes no long-term responsibility for the rationale that supports the high court's judgment").

                                        /s/ Mike Wallach
                                        Mike Wallach
                                        Justice

Publish

Delivered:  November 6, 2025