

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00282-CR

_____

CALEB ROTHLIS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from 432nd District Court
Tarrant County, Texas
Trial Court No. 1850512

---

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Walker

# MEMORANDUM OPINION

Appellant Caleb Rothlis appeals his convictions for aggravated assault with a deadly weapon, two counts of assault on a family or household member by impeding breath or circulation, and one count of unlawful restraint. *See* Tex. Penal Code §§ 20.02(a), (c)(2)(A), 22.01(b)(2)(B), 22.02(a)(2). On appeal, Rothlis argues in a single issue that the trial court abused its discretion by admitting under Article 38.371 of the Texas Code of Criminal Procedure a video showing him yelling threats towards the complainant. *See* Tex. Code Crim. Proc. art. 38.371. Specifically, Rothlis asserts that the trial court should not have admitted this evidence because its probative value was substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403. We affirm.

## I. BACKGROUND

Rothlis entered into a romantic relationship with the complainant in March 2024, and they began living together two months later. Shortly thereafter, they began arguing frequently, and these arguments soon escalated into physical altercations. Over the next several months, Rothlis—at various times—grabbed the complainant's hair, choked her, bit her, stabbed her, beat her, and held a knife to her throat.

In November 2024, Rothlis and the complainant were arguing during a drive when Rothlis suddenly stopped the car in a residential neighborhood, dragged the

2

complainant out, and pushed her into a mud puddle. Rothlis only stopped his attack after a resident came outside wielding a gun and asked what was going on.

The couple then drove to a Target store and continued arguing in the parking lot. After the complainant fled into the store, Target personnel took her to the loss-prevention room so that she could wait safely for a ride, and the police were called. When the police arrived, they asked the complainant about certain marks that Rothlis's hands had left on her neck, but she told them that they were just "hickeys."

A short time later, Rothlis and the complainant went for a long, "aimless[]" drive. During the drive, Rothlis used the complainant's phone to record a forty-seven minute video during which he yelled and screamed at the complainant and threatened that he was going to kill her and her father before killing himself.

Later that week, Rothlis—who had become convinced that the complainant was cheating on him—repeatedly attacked the complainant over a four-day period in an effort to force her to admit to her infidelity. He repeatedly hit and bit her and, at one point, got on top of her and choked her with his hands until she could no longer breathe. He even tied her up in a chair with a tow strap and hit her with the strap's slack.

Not long after these attacks, Rothlis and the complainant went to Target "to get some stuff." As Rothlis exited the store, the complainant took off running towards the back of the store until she found an employee and asked to use a phone

to call her father. Her father picked her up and took her back to his apartment where he made arrangements to take her to the hospital the following morning.

The complainant—who had bruises all over her face, neck, and arms as well as three broken ribs—met with police officers the next day. Rothlis was arrested a short time later and was ultimately charged by indictment with two counts of aggravated assault with a deadly weapon, three counts of assault on a family member by impeding breath or circulation, and one count of unlawful restraint. He pleaded not guilty, and a jury trial was held. After hearing all the evidence, the jury convicted Rothlis on one of the aggravated-assault-with-a-deadly-weapon counts, two of the assault-on-a-family-member-by-impeding-breath-or-circulation counts, and the unlawful-restraint count. Finding the indictment's repeat-offender allegation to be true, the jury assessed Rothlis's punishment at twenty-five years' confinement on the aggravated-assault-with-a-deadly-weapon count and twenty years' confinement on the remaining counts of which he was convicted. The trial court sentenced him accordingly. This appeal followed.[1]

## II. DISCUSSION

In a single issue, Rothlis argues that the trial court abused its discretion by admitting under Article 38.371 the forty-seven minute video depicting him yelling and

---

[1]Rothlis filed a motion for new trial, which was overruled by operation of law. *See* Tex. R. App. P. 21.8 (requiring the trial court to rule on a motion for new trial within seventy-five days after imposing sentence and providing that the motion will be deemed denied if not ruled on within this period).

screaming at the complainant and threatening to kill her and her father because the video's probative value was substantially outweighed by a danger of unfair prejudice. *See* Tex. R. Evid. 403. We disagree.

## A. STANDARD OF REVIEW

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.* If the trial court's evidentiary ruling is correct on any applicable theory of law, we will not disturb it even if the trial court gave the wrong reason for its correct ruling. *De la Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Qualls v. State*, 547 S.W.3d 663, 675 (Tex. App.—Fort Worth 2018, pet. ref'd).

## B. ARTICLE 38.371

Article 38.371—which applies to prosecutions for offenses committed against a member of the defendant's family or household or a person in a dating relationship with the defendant—expressly allows the admission of "evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense . . . , including testimony or evidence regarding the nature of

5

the relationship" between the defendant and the victim. Tex. Code Crim. Proc. art. 38.371(b). "Thus, Article 38.371(b) expressly provides for the admission of extraneous[-]offense evidence regarding the nature of the relationship between an accused and a complainant." *Gaulding v. State*, No. 02-21-00096-CR, 2022 WL 17986026, at \*4 (Tex. App.—Fort Worth Dec. 29, 2022, pet. ref'd) (mem. op., not designated for publication) (first citing *James v. State*, 623 S.W.3d 533, 546 (Tex. App.—Fort Worth 2021, no pet.); and then citing *Mourning v. State*, No. 02-19-00168-CR, 2020 WL 6165309, at \*4–5 (Tex. App.—Fort Worth Oct. 22, 2020, no pet.) (mem. op., not designated for publication)).

### C. RULE 403

Even if evidence regarding the defendant's relationship with the complainant is relevant and admissible under Article 38.371, it can be excluded under Rule 403 of the Texas Rules of Evidence if the danger of unfair prejudice substantially outweighs the evidence's probative value. *See Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd); *Martin v. State*, 176 S.W.3d 887, 895 (Tex. App.—Fort Worth 2005, no pet.); *see also* Tex. R. Evid. 403. A trial court must conduct a Rule 403 balancing test upon a proper objection or request. *See Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd).

"Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial." *James*, 623 S.W.3d at 546–47 (first citing *Montgomery*, 810 S.W.2d at 389; and then citing *Emich v. State*, No. 02-18-

6

00059-CR, 2019 WL 311153, at *7 (Tex. App.—Fort Worth Jan. 24, 2019, no pet.) (mem. op., not designated for publication)). Because of this presumption, it is the burden of the party opposing the admission of the evidence to show that the evidence's probative value is substantially outweighed by one or more of the dangers listed in Rule 403—including unfair prejudice. *James*, 623 S.W.3d at 547; *Wells*, 558 S.W.3d at 669; *Sanders*, 255 S.W.3d at 760.

To determine whether evidence is admissible in the face of a Rule 403 objection, the trial court must conduct a balancing test. *Montgomery*, 810 S.W.2d at 389; *see Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). The Texas Court of Criminal Appeals has instructed that when undertaking a Rule 403 analysis, courts must balance (1) the inherent probative force of the proffered item of evidence and (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would give it undue weight, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641–42. "In reviewing the trial court's [R]ule 403 balancing determination, we are to reverse the trial court's judgment rarely and only after a clear abuse of discretion." *Lumsden v. State*, 564 S.W.3d 858, 877 (Tex. App.—Fort Worth 2018, pet. ref'd) (citation modified).

## D. ANALYSIS

Weighing the *Gigliobianco* factors, we cannot conclude that the trial court abused its discretion by admitting the video.

The first two factors reveal the video to be highly probative. First, the video's inherent probative force is very high because it shed light on the abusive nature of Rothlis's relationship with the complainant and because the witnesses' credibility was a central issue in the case. *See James*, 623 S.W.3d at 548 (holding that "the probative value of the extraneous-offense evidence was strong" when it "was probative of the nature of [the defendant's] abusive relationship with [the victim]" and it "rebut[ted] the defensive theory of fabrication"); *see also McDonnell v. State*, 674 S.W.3d 694, 703 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (holding that evidence of defendant's prior assaults and threats against the victim "was particularly relevant" because "the credibility of the witnesses was a central issue in the case"). Second, the State had a strong need for the video because the only direct evidence of the charged offenses was the complainant's testimony; there were no other eyewitnesses. *See Pyle v. State*, No. 02-24-00155-CR, 2025 WL 728111, at *6 (Tex. App.—Fort Worth Mar. 6, 2025, pet. ref'd) (mem. op., not designated for publication) (holding that the second *Gigliobianco* factor weighed in favor of admission because there was no eyewitness testimony of the charged offense other than the victim's); *Foster v. State*, No. 02-22-00109-CR, 2023 WL 4780566, at *4 (Tex. App.—Fort Worth July 27, 2023, no pet.) (mem. op., not designated for publication) (holding that "the State had a strong need

8

for the [extraneous-offense] evidence" because "the only direct evidence of the alleged offense was [the victim's] testimony"); *James*, 623 S.W.3d at 548 ("The State . . . had a strong need for the extraneous-offense evidence because no one witnessed the charged offenses."). Accordingly, the video's probative value is very high. *See Gigliobianco*, 210 S.W.3d at 641–42.

And Rothlis has failed to show that the video's high probative value was substantially outweighed by any of the dangers listed in Rule 403. *See James*, 623 S.W.3d at 547; *Wells*, 558 S.W.3d at 669; *Sanders*, 255 S.W.3d at 760. First— although the video is undeniably prejudicial—because it depicted threats directed at the complainant, was not remote in time, and did not reflect conduct any more serious than the charged offenses, we cannot conclude that it was *unfairly* prejudicial.[2] *See Hernandez v. State*, No. 11-24-00017-CR, 2025 WL 1829560, at *6 (Tex. App.— Eastland July 3, 2025, no pet.) (mem. op., not designated for publication); *see also Gigliobianco*, 210 S.W.3d at 641 (clarifying that unfair prejudice "refers to a tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an

---

[2]Rothlis argues that the video tended "to suggest a verdict on an improper basis because of the inherently inflammatory and prejudicial character of crimes against females." But because all of Rothlis's charged offenses were alleged to have been committed against the same female depicted in the video—the complainant—this argument is unpersuasive. *Cf. Norwood v. State*, No. 03-13-00230-CR, 2014 WL 4058820, at *5 (Tex. App.—Austin Aug. 15, 2014, pet. ref'd) (mem. op., not designated for publication) ("When the extraneous offense is no more heinous than the charged offense, evidence concerning the extraneous offense is unlikely to cause unfair prejudice.").

emotional one"). Moreover, the trial court's jury charge included a clear limiting instruction restricting the jury's consideration of the extraneous-offense evidence to admissible purposes. This instruction—which we presume the jury followed, *see, e.g.,* *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005)—equipped the jury to weigh the video properly and minimized the risk of the jury's improperly relying on it in reaching its verdict. *See James*, 623 S.W.3d at 549; *see also Landaverde v. State*, No. 05-19-00175-CR, 2020 WL 2897108, at *7–8 (Tex. App.—Dallas June 3, 2020, pet. ref'd) (mem. op., not designated for publication) (holding that trial court's limiting instructions lessened extraneous-offense evidence's tendency to suggest a decision on an improper basis, to confuse or distract the jury from the main issues, or "to leave the jury ill-equipped to evaluate its probative force"). Further, because the evidence was not scientific or technical in nature, there was little risk of jury confusion. *See Foster*, 2023 WL 4780566, at *5. And the presentation of the video—which, as noted, was approximately forty-seven minutes in length—did not unduly delay the trial. *Cf. Hubbard v. State*, No. 02-23-00067-CR, 2023 WL 7399135, at *4 n.8 (Tex. App.—Fort Worth Nov. 9, 2023, pet. ref'd) (mem. op., not designated for publication) (concluding that the time spent to present evidence was "far from 'inordinate'" where it consumed "no more than forty to forty-five minutes of a trial in which the guilt–innocence phase spanned three calendar days and included eight total witnesses"); *Ibenyenwa v. State*, 367 S.W.3d 420, 426 (Tex. App.—Fort Worth 2012, pet. ref'd) (holding that the trial court had not abused its discretion by overruling appellant's

10

Rule 403 objection to the admission of a recorded interview of the child complainant in his trial for sex-related offenses in part because the recording "was only about forty minutes long" and thus "there was little danger of it[s] taking an undue amount of time from the remainder of the trial").

Thus, considering all of the relevant *Gigliobianco* factors and bearing in mind that we are to reverse a trial court's balancing determination under Rule 403 only in rare cases, *see Martinez*, 468 S.W.3d at 718, we cannot conclude that the trial court abused its discretion by admitting the video, *see Zuliani*, 97 S.W.3d at 595. Accordingly, we overrule Rothlis's sole issue.

### III. CONCLUSION

Having overruled Rothlis's sole issue, we affirm the trial court's judgments.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: May 28, 2026