

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00149-CR

———————————————

JARED LEE NEWMAN, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1700311

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

Appellant Jared Lee Newman appeals his conviction for continuous sexual abuse (CSA) of a young child, Fiona.[1] *See* Tex. Penal Code § 21.02(b). Newman raises five appellate points: the court's charge failed to instruct the jury on the statutory requirements of the predicate offenses for CSA, including the requisite mental states (points one and two); the charge impermissibly allowed the jury to convict him of CSA regardless of whether the predicate acts of abuse occurred at least 30 days apart (point three); the charge improperly allowed the jury to find him guilty of separate and distinct predicate offenses, violating the Sixth Amendment's unanimity requirement as interpreted by *Ramos v. Louisiana*, 590 U.S. 83, 140 S. Ct. 1390 (2020) (point four); and the trial court erroneously allowed the State to display prejudicial photographs during voir dire (point five). We will affirm.

## I. Background[2]

Mother and Newman were married in 2007, and they had three children, including Fiona, who was born in 2010. In 2018, Mother and Newman decided to

---

[1]Because the victim was a minor when the alleged offenses occurred, we will refer to her by using a pseudonym and to her family members by their relationships to her. *See* Tex. R. App. P. 9.10 (defining sensitive information).

[2]Newman pleaded not guilty but does not challenge the sufficiency of the evidence. Indeed, a child victim's testimony, standing alone, can be sufficient proof of the offense of CSA. *See Keith v. State*, No. 02-24-00034-CR, 2024 WL 4899022, at *5 (Tex. App.—Fort Worth Nov. 27, 2024, no pet.) (mem. op., not designated for publication) (citing Tex. Code Crim. Proc. art. 38.07(a), (b)(1)). Accordingly, we summarize the trial testimony relevant to Newman's points.

divorce, and by January 2019, Newman had moved in with his mother and stepfather. Fiona and her siblings stayed with Newman every other weekend. At some point, Newman moved in with a girlfriend, and Fiona and her siblings would stay with them.

In fall 2020, while Fiona was in the third grade, she participated in a school program and learned about different forms of sexual abuse. Shortly before the Thanksgiving break, she told Mother about Newman's "confusing touch" of her. When Mother asked for more details, Fiona disclosed that during summer 2018 and again in early 2019, Newman had touched his penis to her vagina, including while showing her pornography.

Mother called 911. After the police investigated the allegations and a sexual assault nurse examiner (SANE) examined and treated Fiona, the State charged Newman with three offenses: (1) CSA, (2) aggravated sexual assault of a child, and (3) indecency with a child by sexual contact.

Because the testimony about Newman's acts of abuse is pertinent to the alleged charge error, we will summarize the testimony of Fiona, the SANE, and Newman.

## A. Fiona's Testimony

At the time of trial, Fiona was 15 years old. She testified to events that occurred in 2018 and 2019 when she was eight. Fiona testified that during the summer of 2018, Newman took care of her while Mother worked. Fiona could not

3

recall every detail, but she estimated that from May to August 2018, Newman touched the inside and outside of her vagina with his penis more than ten times. She recalled more than one occasion when he moved her hand to his penis and "move[d] it." Often—she testified—Newman watched pornography while touching her.

Fiona further testified that Newman continued abusing her in 2019 after he had moved in with his parents. She said that when she stayed at that residence, more than once Newman touched the inside and outside of her vagina with his penis. But unlike the 2018 incidents, Fiona testified that she did not touch his penis with her hand or other body parts and did not recall him watching pornography.[3]

## B. The SANE's Testimony

The State also questioned the SANE who examined and treated Fiona. The SANE testified that Fiona described multiple acts of abuse occurring between summer 2018 and early 2019, including (1) penis-to-vagina contact, (2) penis-to-anus contact, (3) Fiona's oral contact with Newman's genitals, and (4) Fiona's masturbation of and contact with Newman's genitals causing his ejaculation.

## C. Newman's Testimony

Newman denied abusing Fiona. He testified that Fiona was lying about the abuse because—starting when Fiona was ten in 2020—Mother had "probably

---

[3]Concerning her testimony about the 2018–2019 abuse, Fiona recalled that "nothing other than those things happened" and that no additional incidents occurred after Newman moved in with his girlfriend.

coerced" her into lying "because she wanted [the children] for the holidays and wanted [Newman] out of the picture."

After considering all the evidence, the jury found Newman guilty of CSA and thus did not reach the counts concerning the predicate offenses of aggravated sexual assault of a child and indecency with a child by sexual contact. Following the sentencing phase, the jury assessed Newman's punishment at 45 years' confinement, and the trial court sentenced him accordingly.

## II. The Charge

Newman's first four points concern alleged charge error. We will set out the standard of review and then explain why he has not shown any reversible error.

### A. Jury Charge Requirements and Standard of Review

"[T]he jury is the exclusive judge of the facts" but is bound to and governed by the law the trial court provides in its written charge to the jury. *Alcoser v. State*, 663 S.W.3d 160, 164 (Tex. Crim. App. 2022) (citing Tex. Code Crim. Proc. arts. 36.13, 36.14). The court's charge "inform[s] the jury of the applicable law and how to apply it to the facts of the case," *id.* at 164–65, and must "set out all the essential elements of the offense," *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012).

Typically, the court's charge contains abstract and application paragraphs. *Alcoser*, 663 S.W.3d at 165; *Vasquez*, 389 S.W.3d at 366–67. "The abstract paragraphs serve as a glossary to help the jury understand the meaning of concepts and terms

used in the application paragraphs." *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). The application paragraphs "explain[] to the jury, in concrete terms, how to apply the law to the facts of the case," *Yzaguirre v. State*, 394 S.W.3d 526, 530 (Tex. Crim. App. 2013), and are "the heart and soul of the jury charge," *Vasquez*, 389 S.W.3d at 366. The application paragraphs—not the abstract paragraphs—authorize conviction. *Crenshaw*, 378 S.W.3d at 466.

Article 36.14 governs the trial court's delivering the jury charge but does not specify how it must be internally organized *See* Tex. Code Crim. Proc. art. 36.14. But caselaw provides guidance. When a definition or instruction on a theory of law is given in an abstract paragraph, the application paragraph must (1) specify all the conditions to be met before a conviction under such a theory is authorized, (2) authorize a conviction under conditions specified by other paragraphs of the charge to which the application paragraph necessarily and unambiguously refers, or (3) contain some logically consistent combination of such paragraphs. *Vasquez*, 389 S.W.3d at 367. "Thus, if the application paragraph necessarily and unambiguously refers to another paragraph of the jury charge, then a conviction is authorized, and the trial judge need not sua sponte cut and paste that definition into the application paragraph." *Id.* (citation modified).

As the court of criminal appeals has held,

[r]eversible error in the giving of an abstract instruction generally occurs only when the instruction is an incorrect or misleading statement of a law that "the jury must understand in order to implement the

6

commands of the application paragraph," and the "failure to give an abstract instruction is reversible only when such an instruction is necessary to a correct or complete understanding of concepts or terms in the application part of the charge."

*Alcoser*, 663 S.W.3d at 165 (quoting *Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)).

We review a complaint of jury-charge error under a two-step process, considering first whether error exists. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). To this end, we consider "the charge as a whole instead of a series of isolated and unrelated statements," *Vasquez*, 389 S.W.3d at 367 (citation modified), and we presume that the jury followed the trial court's instructions in the manner presented, *Walker v. State*, 300 S.W.3d 836, 850 (Tex. App.—Fort Worth 2009, pet. ref'd) (citing *Young v. State*, 283 S.W.3d 854, 882 (Tex. Crim. App. 2009) (Cochran, J., concurring) ("We must, however, presume that jurors, conscious of the gravity of their tasks, attend closely to the particular language of the trial court's instructions in criminal cases and strive to understand, make sense of, and follow the instructions given them.") (citation modified)). We may abandon this presumption only if evidence shows that the jury did not follow the court's instructions. *Id.* (citing *Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996)).

If we conclude that error exists in the charge, we then analyze that error for harm under the procedural framework of *Almanza v. State*, 686 S.W.2d 157 (Tex.

7

Crim. App. 1985), which turns on whether such error was preserved. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020) (citing *Almanza*, 686 S.W.2d at 171); *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018). Unpreserved charge error is reversible only if it caused egregious harm. *Jordan*, 593 S.W.3d at 346. Preserved charge error is reversible if it caused "some harm." *Id.*

## B. The Charge in this Case

The trial court's charge began with general legal principles and instructions. In the charge's "General Principles," the court informed the jury, "You should give terms their common meanings, unless I provide you a specific definition. If I provide a definition for a term in this charge, you should use the meanings provided in these instructions."

Next, the charge contained seven "Definitions" pertinent to the three charged offenses, including the following:

- A person acts "*Intentionally*," or with intent, with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct.

- A person acts "*Knowingly*," or with knowledge, with respect to the nature of his conduct when he is aware of the nature of his conduct.

- As it relates to the crime of indecency with a child, "*Sexual Contact*" means any touching of any part of the body of a child, including touching through clothing, with any part of the genitals of a person, if committed with the intent to arouse or gratify the sexual desire of any person.

    . . . .

8

- "*Act of Sexual Abuse*[,"] for the purpose of Continuous Sexual Abuse of a Young Child, means Aggravated Sexual Assault of a Child and Indecency with a Child if the actor committed the offense in a manner other than touching, including touching through clothing, the breast of a child.

The "Definitions," however, did not define the capitalized terms "Continuous Sexual Abuse of a Young Child," "Aggravated Sexual Assault of a Child," or "Indecency with a Child." Instead, the charge continued with three sections—one for each count—and in each section, the court provided an abstract statement of law defining the particular offense, application paragraphs tying the offense to Newman, and a unanimity instruction for the specific offense.

In the CSA section, the charge read,

Our law provides [that] a person commits the offense of Continuous Sexual Abuse of a Young Child, if, during a period during a period [sic] that is 30 or more days in duration, the person commits two or more acts of sexual abuse, and at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense.

Immediately following were paragraphs applying each CSA element to Newman.

Pertinent to this appeal, the CSA's application paragraphs instructed the jury to consider whether Newman committed "two or more acts of sexual abuse against a child younger than 14 years of age, including an act constituting the offense of aggravated sexual assault of a child and/or indecency with a child against [Fiona]." But the CSA's application paragraph did not define those predicate acts. After instructing the jury about unanimity on the CSA count, the charge included a

9

"Special Note as to Count One"—to either (1) proceed to Counts Two and Three if the jury found Newman "Not Guilty" on Count One or (2) not address Counts Two and Three upon a "Guilty" verdict to Count One.

In the next section of the charge—pertaining to Count Two—the trial court abstractly defined aggravated sexual assault of a child:

> Our law provides [that] a person commits the offense of Aggravated Sexual Assault of a Child, regardless of whether the person knows the age of the child at the time of the offense, if the person intentionally or knowingly causes the sexual organ of a child to contact the sexual organ of another person, including the actor, and the victim is under 14 years of age.

Then—similar to the charge's CSA section—the charge gave an application section specific to the aggravated-sexual-assault count and a unanimity instruction for that count.

Regarding Count Three, the charge abstractly defined indecency with a child by sexual contact:

> Our law provides [that] a person commits the offense of Indecency with a Child by Sexual Contact, regardless of whether the person knows the age of the child at the time of the offense, if the person, with the intent to arouse or gratify the sexual desire of any person, causes a child younger than seventeen years old to engage in sexual contact.

The charge likewise included an indecency-specific application section and unanimity instruction.

Finally the charge contained deliberation rules, the trial court's signature, and a verdict form for each count. The trial court read the charge to the jury. During

10

deliberations, the jury sent two notes about the evidence; neither concerned the charge. After deliberating, the jury answered "Guilty" on Count One and did not address Counts Two or Three.

**C. Point One: Defining the Predicate Offenses**

In his first point, Newman argues that the "jury charge never defined []or delineated any 'acts that would constitute the offenses' of aggravated sexual assault and indecency for a CSA conviction." Not so.

Newman is correct that the court's charge needed to define the predicate acts. As the Dallas Court of Appeals has recognized, "the individual acts of sexual abuse listed in the [CSA] statute are not elements of the offense, but rather the manner and means by which the actus reus element is committed." *Taylor v. State*, No. 05-22-00193-CR, 2023 WL 3991645, at *1–4 (Tex. App.—Dallas June 14, 2023, pet. ref'd) (mem. op., not designated for publication) (citation modified). Because definitions that affect the meaning of an offense's element should be communicated to the jury, for a jury to understand CSA's acts-of-sexual-abuse element, the court's charge must define each alleged underlying act, such as sexual assault of a child, aggravated sexual assault of a child, or indecency with a child by contact. *Id.*

Here, to make his argument, Newman narrowly focuses on—and impermissibly isolates—the charge's "Definitions" section and Count One's specific abstract and application paragraphs to assert that the charge "wholly omitted" and "never stated" the acts of the underlying offenses upon which his CSA conviction

11

must be predicated. *See Vasquez*, 389 S.W.3d at 367. To illustrate, Newman cites *Johnson v. State*, in which the defendant was charged with CSA predicated on aggravated sexual assault of a child or indecency with a child by contact. No. 14-21-00597-CR, 2023 WL 2029099, at *3 (Tex. App.—Houston [14th Dist.] Feb. 16, 2023, pet. ref'd) (mem. op., not designated for publication). In that case, because the charge defined only aggravated sexual assault and not indecency, the court of appeals concluded that the charge was erroneous. *Id.*; *see also Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009) (stating that "each statutory definition that affects the meaning of an element of the offense must be communicated to the jury") (internal citation omitted).

But the case before us is not like *Johnson*, and Newman's argument overlooks other sections of the charge defining the predicate offenses. As we quoted above, the charge's CSA application paragraphs referred to "acts of sexual abuse," which the "Definitions" section defined as "Aggravated Sexual Assault of a Child and Indecency with a Child." As we quoted above, the charge defined those capitalized terms in the abstract sections preceding each lesser-included-offense's application paragraphs. The trial court could have helpfully used additional language—like "as defined" or other similar signposting[4]—but in addition to using capitalized letters,

---

[4]*See, e.g.*, *Chatman v. State*, 846 S.W.2d 329, 332 (Tex. Crim. App. 1993) (holding that application paragraph that incorporated the law of parties by stating that the defendant either "acting alone or as a party, as that term has been defined" was not

the court's charge instructed the jury that if the court "provide[d] a definition for a term in this charge," it "should use the meaning provided in *these instructions*. [Emphasis added.]"

Despite primarily arguing that the charge "wholly omitted" and "never stated" language that is fully included and plainly stated in the charge, Newman hedges and in a footnote acknowledges the definitions' inclusion: "[T]he lesser[-]included offenses in counts two and three contained the elements of aggravated sexual assault and indecency." He directs us, however, to the court's "Special Note" telling the jury that they should not address Counts Two or Three if they found Newman "Guilty" on Count One. He then urges us to presume that the jury followed this note and not only did not address Counts Two and Three in the verdict form but also stopped reading altogether and ignored the court's definitions of the predicate offenses.

But "[w]e must assume that the jurors read and understood the charge as a whole," which the court read in its entirety to the jurors before their deliberations. *Branum v. State*, 535 S.W.3d 217, 229 (Tex. App.—Fort Worth 2017, no pet.) (quoting *Martin v. State*, 335 S.W.3d 867, 874 (Tex. App.—Austin 2011, pet. ref'd)); *see Williams v. State*, No. 03-18-00267-CR, 2018 WL 3451635, at *8 (Tex. App.—Austin July 18,

---

erroneous); *Love v. State*, 706 S.W.3d 584, 600–04 (Tex. App.—Austin 2024, pet. ref'd) (considering the impact of charge language instructing the jury to "bear[] in mind the foregoing instructions" to conclude there was no error when the charge was read as a whole); *Thompson v. State*, No. 02-18-00084-CR, 2019 WL 3819265, at *10 (Tex. App.—Fort Worth Aug. 15, 2019, no pet.) (mem. op., not designated for publication) (collecting cases concerning self-referential language akin to "[n]ow bearing in mind the foregoing instructions").

13

2018, pet. ref'd) (mem. op., not designated for publication) (explaining that the trial court's reading of the entire jury charge made the jury "aware of the greater and lesser offenses listed in the charge"). The jury charge twice included the "Special Note": first in the Count One specific section and again in Count One's verdict form. But such an instruction provided no new definitions or instructions about using the charge's defined terms and, importantly, did not override the court's specific instruction to follow the charge's definitions. Rather, it was an instruction designed only to direct the jury about which of the verdict forms it needed to address and to avoid a potential double-jeopardy problem if the jury answered "Guilty" to all three verdict forms. *See, e.g.*, *Diaz v. State*, No. 13-22-00602-CR, 2024 WL 3818560, at *6 (Tex. App.—Corpus Christi–Edinburg Aug. 15, 2024, pet. ref'd) (mem. op., not designated for publication) (holding that appellant's dual convictions violated double jeopardy because the predicate child-sexual-abuse convictions "occurred during the time period in which [CSA] offense was committed"); *Ibenyenwa v. State*, 367 S.W.3d 420, 426 (Tex. App.—Fort Worth 2012, pet. ref'd); *see also Ex parte Covarrubias*, 665 S.W.3d 605, 616 (Tex. Crim. App. 2023) ("An instruction that guides the jury on when and how to consider a lesser-included offense is sometimes known as a 'transitional instruction.'").

No evidence suggests that the jury did not follow both of the court's instructions. That is, nothing suggests that the jury did not follow the charge's instruction to use the charge's definitions, including those for the predicate acts.

14

Likewise, the charge affirmatively indicates that once the jury found Newman "Guilty" of CSA, it followed the charge's transitional instruction to not address the verdict forms for the predicate offenses. In sum, the court's charge presented a logically consistent combination of paragraphs containing both abstract and application paragraphs for the jury to follow, and the CSA application paragraphs necessarily and unambiguously referred to the definitions the court had given, including for the predicate acts. *See Vasquez*, 389 S.W.3d at 367.

Because we presume that the jury understood and followed the trial court's instructions—including the instruction to use the charge's definitions—we conclude that the trial court did not err by its manner of defining the predicate acts. *See Thompson*, 2019 WL 3819265, at \*10; *Walker*, 300 S.W.3d at 850. We overrule Newman's first point.

## D. Point Two: Defining the Applicable Mental States

Newman's second point is closely related to his first. In it, he contends that "the charge failed to require any culpable mental state for conviction." The crux of his argument is that because the charge failed to define the predicate acts, the charge did not require the jury to find their attendant mens rea elements. We disagree.

"[T]he CSA statute does not require general mental culpability beyond the mental culpability required for its constituent offenses." *Williams v. State*, No. 02-20-00104-CR, 2021 WL 5227167, at \*2–4 (Tex. App.—Fort Worth Nov. 10, 2021, no pet.) (mem. op., not designated for publication). In *Williams*, for instance,

15

this court stated that "there is no error where the abstract portion of the charge supplies a culpable mental state not specified in the application paragraph." *Id.* at *3 (citation modified).

As we quoted above, the "Definitions" section—in the charge's abstract paragraphs—defined when a person acts "intentionally" and "knowingly." Additionally, the charge's definitions for both aggravated sexual assault of a child and indecency with a child by contact included the mens rea elements applicable to each predicate act. *See* Tex. Penal Code §§ 21.11, 22.021. So the charge's abstract paragraphs supplied the applicable mental states. *See Williams*, 2021 WL 5227167, at *3.

Simply put, the charge does not omit the applicable mens rea elements, and we presume that the jury followed the charge's instructions to use the provided definitions. *See Thompson*, 2019 WL 3819265, at *10; *Walker*, 300 S.W.3d at 850. We thus conclude that the trial court did not err by including the mens rea elements in the charge's abstract paragraphs. *See Williams*, 2021 WL 5227167, at *3. We overrule Newman's second point.

**E. Point Three: Instructing the Jury about CSA's 30-Day-Duration Element**

Newman complains in his third point about the following language in the CSA section:

> [A] person commits the offense of Continuous Sexual Abuse of a Young Child, if, during a period . . . that is 30 or more days in duration, the person commits two or more acts of sexual abuse.

16

. . . .

## APPLICATION – COUNT ONE

Now, if you find from the evidence beyond a reasonable doubt that:

1. The Defendant: Jared Lee Newman;

2. Committed the offense of: Continuous Sexual Abuse of a Young Child;

3. **On or about: June 1, 2018, through March 1, 2019, during a period of time that is 30 days or more in duration**;

. . . .

then you will find the Defendant "Guilty" of the offense as charged in the indictment.

. . . .

With regard to element 3, the State is not required to prove that the alleged offense happened on that exact date. **It is sufficient if the State proves that the offense was committed before February 7th, 2022, the date the indictment was filed.** [Emphases added.]

Newman argues that the charge's language "negates the 30-day requirement in two distinct ways: it misdirects the 30 days as the time period alleged and it specifically instructs that the only time requirement is that the offense occurred prior to February 7th, 2022." Neither argument provides a basis for reversal.

Before turning to Newman's main argument, we briefly address his secondary point concerning the charge's instruction that "[i]t is sufficient if the State proves that the offense was committed before February 7, 2022, the date the indictment was

17

filed." Newman suggests that this instruction "negated" the CSA's specific instruction concerning CSA's 30-day-duration element.

But far from negating the 30-day-duration instruction, the challenged language simply informed the jury that the "State [was] not required to prove that the alleged offense happened on that exact date." This language is wholly consistent with the Code of Criminal Procedure and well-settled precedent that the State is not required to prove the exact date of an offense and need prove only that an offense occurred before an indictment's presentment and within any applicable limitations period. *See* Tex. Code Crim. Proc. art. 21.02(6); *Sledge v. State*, 953 S.W.2d 253, 255–56 (Tex. Crim. App. 1997). We conclude that the charge's instruction concerning the State's not being required to prove the exact date—so long as it proved pre-indictment conduct—was not erroneous.

Turning back to Newman's primary argument concerning the 30-day-duration element, Newman does not complain that the charge language incorrectly presents the CSA's statutory elements. *See* Tex. Penal Code § 21.02(b)(1) ("A person commits an offense if . . . during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse . . . ."); *see Tidbeaux v. State*, No. 02-24-00429-CR, 2025 WL 2736519, at *3 (Tex. App.—Fort Worth Sept. 25, 2025, no pet.) (mem. op., not designated for publication) ("Although the exact dates of the acts of sexual abuse need not be proven, the offense of [CSA] does require proof that one act of sexual abuse occurred on at least the 29th day after the day of

18

another act of sexual abuse." (quoting *Lawson v. State*, No. 02-17-00201-CR, 2018 WL 1192478, at \*4 (Tex. App.—Fort Worth Mar. 8, 2018, no pet.) (per curiam) (mem. op., not designated for publication)). Instead, he argues that by linking the indictment's "on or about June 1, 2018, through March 1, 2019" language to the statute's "30 days or more in duration" requirement, the charge confused the jury and allowed a conviction based on acts occurring within less than 30 days, rather than acts at least 30 days apart. In other words, Newman complains of a latent ambiguity in the charge's duration language. *See Cisnerosmartinez v. State*, No. 02-24-00144-CR, 2025 WL 1840568, at \*9 (Tex. App.—Fort Worth July 3, 2025, pet. ref'd) (mem. op., not designated for publication).

Both sides observe that the courts of appeals have not uniformly resolved whether similar charge language is error and that the Court of Criminal Appeals has not resolved the issue. *See id.* at \*9–10 (discussing split). And so far, when addressing this unobjected-to charge error, this court has assumed without deciding error and proceeded to analyze harm. *See Tidbeaux*, 2025 WL 2736519, at \*4–6; *Cisnerosmartinez*, 2025 WL 1840568, at \*9–11; *Stevens v. State*, No. 02-23-00122-CR, 2024 WL 3978169, at \*9–10 (Tex. App.—Fort Worth Aug. 29, 2024, pet. ref'd) (mem. op., not designated for publication); *Williams*, 2021 WL 5227167, at \*7.

We have considered the State's request that we modify our approach and address whether error has occurred. But in the interest of consistency and expediency, we again assume without deciding that the charge's duration language

was erroneous because Newman has not shown that any such assumed charge error resulted in egregious harm. *See Tidbeaux*, 2025 WL 2736519, at *4–6; *Cisnerosmartinez*, 2025 WL 1840568, at *9–11; *Stevens*, 2024 WL 3978169, at *9–10; *Williams*, 2021 WL 5227167, at *7; *see also Cathey v. State*, 992 S.W.2d 460, 466 (Tex. Crim. App. 1999) (assuming charge error and addressing harm).

To assess harm, we consider (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of the probative evidence; (3) the argument of counsel; and (4) any other relevant information in the record as a whole. *Alcoser*, 663 S.W.3d at 165. A finding of egregious harm must be based on actual rather than theoretical harm. *Id.* Egregious harm is a difficult standard to meet and requires a fact-specific analysis. *Id.* Jury-charge error causes egregious harm if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory. *Id.*

Reviewing the whole charge—similar to that in *Stevens*, 2024 WL 3978169, at *14—the CSA's application paragraph included the "on or about" language from the indictment that is not in the statute, and the CSA's specific abstract paragraph materially tracked the CSA statute. *See* Tex. Penal Code § 21.02(b)(1). The abstract paragraph's language "mitigates any harm that may have occurred from the application paragraph's language." *Stevens*, 2024 WL 3978169, at *14 (citing *Williams*, 2021 WL 5227167, at *6). So too did Count One's unanimity instruction stating that "[t]he jury must agree unanimously that the Defendant, during a period that is 30 or

20

more days in duration, committed two or more acts of sexual abuse." *See id.* Thus, a view of the entire charge does not weigh in favor of egregious harm. *See id.*

Regarding the trial evidence, Fiona, Mother, and the SANE established that Newman committed acts of abuse in the summer of 2018 and again in early 2019. Thus, there was ample evidence that Newman, during a period that was 30 or more days in duration, committed two or more acts of sexual abuse against Fiona. *See* Tex. Penal Code § 21.02(b). This factor does not weigh in favor of egregious harm. *See Stevens*, 2024 WL 3978169, at *14.

Concerning the argument of counsel, the State mentioned the duration element throughout its opening statements and closing arguments. For example, the State argued that Fiona "was molested by her father over an entire summer[,] and it continued on into January of the following year, and that is more than 30 days apart." The State further argued that "[n]o one is debating that the time frame here is between June 1st, 2018, and March 1st, 2019," and it urged the jury to find Newman guilty of CSA.

Newman did not contest the duration element. *See Lane v. State*, 957 S.W.2d 584, 587 (Tex. App.—Dallas 1997, pet. ref'd) (concluding that omission from charge of element of offense did not cause egregious harm in part because element was not contested at trial). Rather, he wanted the jury to find him not guilty because of "credibility issues," arguing that Fiona could not remember every detail and that he had been "falsely accused." In rebuttal, the State again argued about Fiona's "liv[ing]

21

in a hellscape for 90 days at least, all summer long" and "then going into the next year." Examining all the arguments, the State's attorney clearly explained that the jury had to find that Newman had committed two acts of sexual abuse that were separated by at least 30 days. *See Stevens*, 2024 WL 3978169, at *14 (citing *Williams*, 2021 WL 5227167, at *6). This factor does not weigh in favor of egregious harm.

Finally, concerning other relevant trial information, the State explained the CSA offense to the jury during voir dire:

> In our indictment we have aggravated sexual assault of a child, and we have indecency with a child by contact. . . . It has to be something different for it to make continuous. And I'm going to break those offenses down for you, but just for purposes of time, that's what we're doing. Those two acts have to be 30 or more days apart. The idea is that it's not just a kind of one-off short period of time. It is an ongoing thing. So we have -- that's why dates are important here.

Even Newman's trial counsel acknowledged that the State had explained the duration element:

> [W]hat the law says is that there have to be, as the State said, two or more events that are 30 or more days apart. That's the minimum length of time, can't say anything else about it. So you know it's at least 30 days that those things were separated. Knowing that there are at least two things that are 30 or more days apart, that's what the child has come in and said has happened that led to an arrest, a charge, and an indictment.

The record indicates that during voir dire, both the State and defense counsel helped the jury to understand the CSA duration element. So this factor does not weigh in favor of egregious harm.

22

Accordingly, based on our review of the *Almanza* factors, we cannot say that the assumed error egregiously harmed Newman. *See Almanza*, 686 S.W.2d at 171; *Cisnerosmartinez*, 2025 WL 1840568, at *11. We overrule his third point.

## F. Point Four: The Charge's CSA Unanimity Instruction

In his fourth point, Newman argues that under *Ramos*, 590 U.S. at 93, 140 S. Ct. at 1397, the trial court erred by not requiring the jury's unanimity on the predicate acts of sexual abuse underlying its decision of guilt on the CSA offense. Specifically, Newman objected to the following instruction concerning the CSA offense:

> With regard to element 5,[5] members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the Defendant or the exact date when those acts were committed. The jury must agree unanimously that the Defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.

But as the State points out—and as even Newman acknowledges—we have repeatedly rejected the unanimity argument that Newman is making in his fourth

---

[5]Element five concerned the jury's finding the following: "To-wit, the Defendant: Did commit two or more acts of sexual abuse against a child younger than 14 years of age, including an act constituting the offense of aggravated sexual assault of a child and/or indecency with a child against [Fiona] . . . ."

23

issue.[6] *See Cisnerosmartinez*, 2025 WL 1840568, at *12; *Stevens*, 2024 WL 3978169, at *15; *Williams*, 2021 WL 5227167, at *7.

In addressing the identical complaint in *Stevens* and *Cisnerosmartinez*—both of which addressed *Ramos*—this court "st[ood] by [its] reasoning . . . and h[e]ld that the trial court did not err in instructing the jury that it did not need to unanimously agree about the underlying acts of sexual abuse to find [the defendant] guilty under the CSA statute." *Stevens*, 2024 WL 3948169, at *15; *Cisnerosmartinez*, 2025 WL 1840568, at *12 ("[W]e continue to stand by this reasoning."). Applying this court's precedent to the facts of this case, we hold that the trial court did not err by instructing the jury that it did not need to unanimously agree about the underlying acts of sexual abuse to find Newman guilty of CSA. *See Cisnerosmartinez*, 2025 WL 1840568, at *12; *Stevens*, 2024 WL 3978169, at *15; *Williams*, 2021 WL 5227167, at *7. We overrule Newman's fourth point.

### III. Voir Dire

Finally, in his fifth point, Newman complains about the State's displaying during voir dire what he contends were "highly prejudicial" photos in its PowerPoint slide:

---

[6]Newman presents no argument on why we should abandon our prior holdings and concedes that he is raising the issue to preserve it for further review.

## Sexual Assault

- What does a sex offender look like?
  - Known Perpetrator / Acquaintance
  - Mostly strangers?
- What does a victim look like?
  - Fight? Report Immediately?
  - How might a victim behave in court/at the time/later in life?
- False reports?
  - Motivations
- Ever reported sexual abuse?
- Know anyone who has reported sex abuse?
  - Know anyone who has not reported?






We conclude that Newman has not shown that the trial court abused its discretion in allowing the State to display the slide.

Voir dire examination permits the parties to assess prospective jurors' desirability and to select a "competent, fair, impartial, and unprejudiced jury[.]" *Staley v. State*, 887 S.W.2d 885, 896 (Tex. Crim. App. 1994) (citation omitted). Questions during voir dire are generally proper if they seek to discover a juror's views on an issue applicable to the case.[7] *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002)

---

[7]Parties may not ask improper commitment questions—"those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after

(citing *Smith v. State*, 703 S.W.2d 641, 643 (Tex. Crim. App. 1985)); *see also Tobar v. State*, 874 S.W.2d 87, 89 (Tex. App.—Corpus Christi–Edinburg 1994, pet. ref'd) ("Voir dire questions are relevant if they involve issues in the case, are necessary to the intelligent use of peremptory challenges, or are relevant to challenges for cause."). Parties may also inquire into a venire member's general background or philosophical outlook. *Davis v. State*, 349 S.W.3d 517, 518–19 (Tex. Crim. App. 2011) (citing *Sells v. State*, 121 S.W.3d 748, 756 n.22 (Tex. Crim. App. 2003)).

During voir dire, trial courts have broad discretion to determine the propriety of a particular question. *Barajas*, 93 S.W.3d at 38. Accordingly, an appellate court should not disturb a trial court's ruling absent an abuse of discretion. *Id.*

Here, when the State showed the challenged slide, it asked, "[W]ho here has -- recognizes the three people here on the right?" At that point, Newman's counsel requested a bench conference and objected to the State's implied comparison between Newman and Jared Fogle, John Wayne Gacy, and Woody Allen. Newman argued that the State was "casting a bias against" him and denying his right to a fair trial.

In response, the State explained that it was merely "seek[ing] out known biases against people's ideas of what sex offenders are, people who sexually abuse, . . . [and] what they see on TV versus reality." The trial court overruled Newman's objection

---

learning a particular fact." *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). Although Newman cites *Standefer* concerning a judge's discretion, he does not argue that the State asked any improper commitment questions.

and gave him a running objection, after which the State asked a particular venire member if he recognized any of the three persons. The venire member identified all three, and the State followed up, "All three different -- pretty different types of guys, right?" He agreed.

Newman's counsel then asked for another bench conference and obtained a running objection to the State's questioning the panel about the persons in the PowerPoint slide, which the court granted. The State then asked, "So they are all known in the media for different types of child sexual abuse convicted [sic]; is that correct? A venire member answered, "I don't know if Woody Allen was convicted" or accused, and the State agreed that Allen had only been accused.

The State then asked the panel a broad question: "If anybody wants to volunteer, what do you think a sex offender, you know, or somebody who is accused of sexual assault, their relationship to victim is? Is it always a stranger like stranger danger, or is it oftentimes somebody in their family or someone that they know?" The State continued questioning the panel on such broad topics for approximately 17 or 18 minutes—without again referencing the photos—before switching slides, at which point Newman's counsel reurged his objection, pointing out that the slide had been physically displayed directly behind Newman. The trial court overruled this objection.

On appeal, Newman argues that the State's questions about the photos had no relevance, and the State argues that it simply used the photos to "illustrate and spark

conversation with the jurors about what a sex offender might look like, nothing more." We agree that the questions were relevant.

The State's slide—including the listed questions—demonstrates that the State was attempting to inquire about the potential jurors' thoughts and biases on a variety of topics related to the issues in the case, including who may sexually abuse someone, the relationships between victims and their abusers, who can become a victim, whether people are motivated to make false reports, and their own personal experiences with sexual abuse. In light of Fiona's trial testimony that Newman had abused her, and his testimony accusing Fiona of lying at Mother's behest, the State's questions about the slide—including asking general questions about the photos with no direct comparison to Newman—were relevant to the issues in the case. *See Davis*, 349 S.W.3d at 518–19; *Barajas*, 93 S.W.3d at 38; *Tobar*, 874 S.W.2d at 89. Thus, on this record, we cannot say that the trial court abused its discretion in overruling Newman's objections.[8] We thus overrule Newman's fifth point.

---

[8]Even if we reached the issue of harm, we do not agree with Newman's argument that "[b]y showing the photographs, a bias was created that cannot be reversed." For one thing, he cites no binding authority for his proposed presumed-harm rule. But more fundamentally, nothing in the record indicates that the State's complained-of questions and its display of the photos resulted in a biased person's selection for the jury that then denied Newman a fair trial. *See, e.g.*, *McQueen v. State*, No. 11-21-00098-CR, 2022 WL 16984292, at *3–4 (Tex. App.—Eastland Nov. 17, 2022, no pet.) (mem. op., not designated for publication); *Villegas v. State*, Nos. 04-07-00109-CR, 04-07-00110-CR, 04-07-00111-CR, 2008 WL 441755, at *2–3 (Tex. App.—San Antonio Feb. 20, 2008, no pet.) (mem. op., not designated for publication); *cf. Sanchez v. State*, 165 S.W.3d 707, 712–13 (Tex. Crim. App. 2005)

## IV. Conclusion

Having overruled Newman's five points, we affirm the trial court's judgment of conviction.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: May 7, 2026

---

(requiring an appellate court to assess if an improper commitment question "poisoned" the jury or any juror).